No. 73–1804. SHULTZ, DBA WALT SHULTZ EQUIPMENT Co., ET AL. *v.* MOORE. C. A. 10th Cir. Certiorari denied.

MR. JUSTICE DOUGLAS, dissenting.

This is an action for an injunction and damages for the infringement of a patent held by respondent Moore. Petitioner Shultz defended on the ground that the patent was invalid. The patented product is a "pants topper," used in the dry cleaning business for finishing and pressing men's trousers. Moore obtained his patent in 1955. At the trial there was evidence that patents on devices having functions similar to Moore's had issued prior to his patent; not all of these prior patents had been brought to the attention of the examiner who recommended that Moore be granted a patent. A jury verdict in Moore's favor was set aside by the trial court on the ground that the subject matter was "obvious . . . to a person having ordinary skill in the art," 35 U. S. C. § 103. The Court of Appeals reversed, holding that the patent carries a presumption of validity overcome only by clear and convincing evidence, and that obviousness is a factual question on which the trial judge should not override the jury. With all respect, that holding permits the standard of patentability to be diluted and haphazardly applied.

It bears repeating that patents derive from the specific constitutional authorization of Congress "[t]o promote

---

the Progress of . . . useful Arts, by securing for limited Times to . . . Inventors the exclusive Right to their . . . Discoveries." Art. I, § 8, cl. 8. Writing against the backdrop of abuses by the Crown in granting monopolies, the Framers did not intend these "exclusive rights" to be granted freely. To justify the toll exacted by exclusivity, the invention had to make a distinctive contribution to the advancement of scientific knowledge. Besides novelty and utility, a distinctive contribution expanding the frontiers of scientific and industrial knowledge was demanded. This constitutional restraint on the dispensation of patents was once mirrored in our cases under the standard of "invention." See *Reckendorfer* v. *Faber*, 92 U. S. 347 (1876); *Smith* v. *Whitman Saddle Co.*, 148 U. S. 674 (1893); *Potts* v. *Creager*, 155 U. S. 597 (1895); *Concrete Appliances Co.* v. *Gomery*, 269 U. S. 177 (1925); *Mantle Lamp Co.* v. *Aluminum Products Co.*, 301 U. S. 544 (1937). The standard is now embodied in 35 U. S. C. § 103, which requires a "non-obvious subject matter." *Graham* v. *John Deere Co.*, 383 U. S. 1, 17 (1966).

Though the label has changed, the standard of patentability is at root a constitutional standard. In determining patent validity under the statute, a court simultaneously holds the statute true to its constitutional source. This is but a specific application of the principle that statutes are construed to avoid any overreaching of constitutional limitations. *E. g., Screws* v. *United States*, 325 U. S. 91, 98 (1945); *United States* v. *Rumely*, 345 U. S. 41, 47 (1953); *Ashwander* v. *TVA*, 297 U. S. 288, 348 (1936) (Brandeis, J., concurring); *United States* v. *Seeger*, 380 U. S. 163, 188 (1965) (concurring opinion).

In every patent infringement suit a court is called upon to oversee obedience to the constitutional standard. It cannot be delegated to the jury on the supposition that only a question of fact is involved. Factual assessments are, of course, part of the process of judging validity.

The prior art must be ascertained and the unique features of the patentee's contribution identified. But the determination whether the patentee's distinctive contribution is of such a character as to justify the 17-year monopoly is one that demands reasoned elaboration and, therefore, treatment as a question of law. See *Great Atlantic & Pacific Tea Co.* v. *Supermarket Equipment Co.*, 340 U. S. 147, 155 (1950) (concurring opinion). Findings that identify the unique features of the patented device and explain why they advance the art are essential to permit appellate review to insure that constitutional limitations have not been exceeded. The responsibility belongs to the courts. It will not do to leave such matters to unarticulated resolution by the jury.

Nor can the courts rely upon the Patent Office always to apply the standard faithfully. The proceedings on an application are not adversary. No representative of the public appears to contest unwarranted claims; the examiner alone must face the persistent applicant. A disappointed applicant may appeal an adverse administrative decision, but no corresponding check is available to overturn an erroneous finding of patentability. It does not impugn the good faith of examiners to observe that errors on the side of patentability slip through such a process. Litigation of patent validity in infringement suits presents the only opportunity for judicial correction of the errors of generosity.

The decision below holding patentability a question of fact for the jury represents an abdication which is likely to produce haphazard application of the statutory and constitutional standard. Happily, two other circuits have not adopted this approach. See *Swofford* v. *B&W, Inc.*, 395 F. 2d 362 (CA5 1968); *Hensley Equipment Co.* v. *Esco Corp.*, 375 F. 2d 432 (CA9 1967). I would grant certiorari.