CMI CORPORATION, Plaintiff-Appellee,

v.

METROPOLITAN ENTERPRISES, INC.,
Defendant-Appellant.

No. 74–1448.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 20, 1975.

Decided March 31, 1976.

Rehearing and Rehearing En Banc
Denied June 7, 1976.

Carter H. Kokjer, Atty., Kansas City, Mo. (Joseph B. Bowman of Lowe, Kokjer, Kircher, Wharton & Bowman, Kansas City, Mo. and Edward H. Moler of Barefoot, Moler & Claro, Oklahoma City, Okl., on the brief), for defendant-appellant.

Jerry J. Dunlap, Atty., Oklahoma City, Okl. (Bill D. McCarthy of Dunlap & Codding, Oklahoma City, Okl., on the brief), for plaintiff-appellee.

Before SETH, HOLLOWAY and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiff-appellee CMI Corp., assignee of Patent No. 3,438,520 (the Williams patent), brought suit against defendant-appellant Metropolitan Enterprises, Inc., claiming infringement of its Williams patent and seeking damages and injunctive relief. The patent in suit discloses a process for loading granular material varying in particle size into bins in the form of "slugs" so that segregation of larger particles from the smaller ones can be avoided.

Plaintiff is engaged in the manufacture and sale of hotmix asphalt plants and storage equipment for use in such plants, employing the Williams process. Defendant is not a manufacturer or seller of such equipment, but operates a hotmix asphalt storage system manufactured and sold to it by Standard Havens System, Inc., which uses Patent No. 3,777,909 (the Rheinfrank patent). In the operation of both plaintiff's equipment and Standard's system, used by

defendant, trucks are loaded with hotmix asphalt from the bins filled by the processes to be discussed. Standard openly defended and controlled the lawsuit against its customer, the defendant Metropolitan, and was determined by the trial court to be the real party in interest and bound by the judgment.

The case was tried to the court. Defendant denied infringement and alleged invalidity of plaintiff's Williams patent. Generally, the trial court found (1) that the Williams patent is valid; (2) that defendant's equipment uses a process of collecting and intermittently discharging "slugs" of hotmix; (3) that similar terms used in Standard's advertising represented the process as being the same as plaintiff's method of discharging "slugs" into bins, so that defendant is estopped to deny its use of such a method of collection and discharge of "slugs"; and (4) that each of the four claims of the Williams patent is infringed by the equipment used by defendant. On appeal defendant challenges all of these findings and conclusions, and others. We sustain the ruling that the Williams patent is valid, but conclude that it is not infringed.

## I

*The nature of the patent in suit and the allegedly infringing device and the trial court's findings*

Plaintiff's Williams patent is entitled "Slug Filling of Bins." As noted, its object is to overcome problems of segregation encountered in the loading of solid material varying in particle size into storage bins.[1] In the past a common technique used in loading such material was to allow it to flow into the center of a bin in a continuous stream. The problem with this method is that the material tends to build up in the shape of a cone with the result that the larger particles tend to roll toward the outside while finer particles tend to stay in the middle (see Figure 1 of the Williams drawing in the appendix to this opinion). In four claims,[2] the Williams patent discloses a process by which the material is first formed into "slugs" (18 and 18a) which are then dropped one by one into the center of the bin. As each "slug" is dropped, a portion of the material already in the bin is spread out by the impact, thus preventing the formation of a cone shape.

By this method the bin is allowed to fill with a body of uniform mix having a flat or nearly flat top surface (19 and 19a), and segregation is avoided. The disclosure points out that the "slug" arrives at the level of the material in the bin with a considerable amount of kinetic energy. This results in a shock to the pile of material whose flat top causes the energy to activate a sheer plane in the mass of material, causing the material to move en masse toward the outside. The contents move uniformly, duplicating the mixture put in the bin (R. 2E–3E). Thus segregation is avoided.

1. While examples of use of the disclosed process given in the specifications of the patent in suit all deal with cattle feed, we agree with the trial court that the patent is not restricted to use in dealing with segregation problems associated with such material, and with its finding that the process is particularly helpful in storage of hotmix asphalt, which is also such a granular material having particles of different size (see Findings of Fact Nos. 18, 19 and 21).

2. The claims of the Williams patent (the patent in suit) are:

1. In a process for filling material varying in particle size into a bin without substantial segregation of the particles, the steps of forming all of the material successively into slugs over the bin, and dropping each slug as it is formed into the bin to build up a body therein having a flat top.

2. The process of claim 1 in which the slugs are formed by collecting the material from a continuous stream into a container and then quickly opening the container.

3. The process of claim 1 in which the material filled into the bin consists of a composition of different materials varying in particle size and density.

4. In a process for filling a stream of material varying in particle size into a bin without substantial segregation of the particles, the steps of collecting a stream of said material in successive slugs, and dropping each slug as it is formed into the bin to build a body therein having a flat top.

The "Surg-Stor" storage system manufactured by Standard and sold to defendant also involves intermittent feeding of asphalt into bins. Standard manufactures its system pursuant to Patent No. 3,777,909 (the Rheinfrank patent) entitled "Apparatus for Loading Hotmix in a Surge Bin." The primary object of this patent is described in the summary of the invention as follows:

> The primary object of this invention is to provide a method and apparatus to substantially reduce segregation of the aggregates when hotmix is discharged into a surge bin. To accomplish this, hotmix is continuously fed to the upper end of the bin *but is intermittently interrupted from free fall toward the bottom of the bin in pulses.* Therefore, most simply stated, this invention transforms the normally continuous loading operation into a pulse-type operation which prevents segregation of the aggregates within the surge bin. (R. 8E; [3], col. 1, lines 58–67) (emphasis added).

The main element of Standard's Rheinfrank patent is a conically bottomed hopper (10) which is concentrically mounted on top of a storage bin (11) (see the Rheinfrank drawing in the appendix to this opinion). The hopper is identified by Standard with the tradename "Glasgow Batcher." The cylindrical portion of the batcher (25) is six feet in diameter, the cone angle of the conical portion below (26) is 55° from the horizontal, and the opening of the bottom of the batcher is two feet in diameter.

Asphalt is carried in small amounts by a conveyor from ground level up to the batcher where it accumulates in 5000 pound batches (R. 168). The material is then released into the bin "en masse". The bottom opening of the batcher is controlled by clamshell gates (34) which are designed to be opened and closed in response to the operation of air cylinders (39). Approximately one second is required to open the gates, and they remain open for four seconds while the batcher empties.[4]

The equipment manufactured by plaintiff to carry out its patented process, *i. e.,* the "Slug Filling of Bins," is very similar to that manufactured by Standard. Plaintiff also employs a conically bottomed hopper, which it terms a "slug feeder," concentrically mounted on top of a storage bin. The diameter of the cylindrical portion is six feet; the cone angle is 55° from the horizontal; the opening at the bottom is 2½ feet diameter; and the capacity is approximately 5500 pounds. Clam-shell gates remain open five seconds while the "slug feeder" empties.[5]

Essentially the trial court found or concluded, *inter alia,* that (1) the prior art patent of Plumb relied on by defendant (discussed in detail, *infra*), which was not cited by the Patent Office, is no more pertinent than the prior art that was before the Patent Office; (2) the patent in suit was not anticipated by prior art or obvious; (3) because of representations made by Standard in its advertising, in effect describing a method of solving the problem of segrega-

---

**3.** Unless otherwise indicated, "R" refers to the printed Joint Appendix on appeal.

**4.** The claim of the Rheinfrank patent is:
  1. In combination with a continuous conveyor and a surge bin,
  an open topped container surmounting said surge bin and concentrically aligned therewith, said container being of relatively smaller size than said surge bin and including an upper cylindrical portion and a frusto-conical portion constructed with a slope in the range of 60° to 80° and having a discharge opening at the lower end thereof;
  movable closure means associated with said container and operable to close said discharge opening, said closure means including

a pair of clam gates, each of said gates pivotally supported at opposite sides of said container;
pneumatic cylinder means connected to said clam gates to intermittently move said gates and thereby open and close said discharge opening; and
a supporting rail attached to the upper cylindrical portion of said container and operable to support the end of said continuous conveyor.

**5.** Of course, similarities in the apparatus manufactured by plaintiff and by Standard are irrelevant to the question of infringement, for plaintiff's infringement case can be based only on the claims of his Williams patent.

tion nearly identical to that disclosed in the patent in suit (the dropping of "slugs"), defendant is estopped to deny that mix is dropped in "slugs" into its bin; (4) the equipment used by defendant does collect hotmix asphalt successively in "slugs," which, when dropped into the bin, build up a body of mix "having an upper surface sufficiently flat to prevent rock rolling and segregation;" and (5) the method employed in defendant's hotmix asphalt storage system infringes each of the claims of the Williams patent.

As stated, we sustain the trial court's holding that the patent in suit is valid, but are unable to agree that it is infringed by defendant's apparatus and method. Following the practice which has been indicated as preferable, we will turn first to questions concerning the validity of plaintiff's patent, and then to the issue of infringement. See *Sinclair & Carroll Co., Inc. v. Interchemical Corp.*, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, 1646; *Blish, Mize and Silliman Hdwe. Co. v. Time Saver Tools, Inc.*, 236 F.2d 913 (10th Cir.), cert. denied, 352 U.S. 1004, 77 S.Ct. 565, 1 L.Ed.2d 549.

## II

### Validity of the Williams patent

In attacking the validity of the Williams patent defendant essentially says that the technique of intermittent feeding of asphalt

hotmix to inhibit segregation was known prior to application for the Williams patent; that the concept appears in the Plumb patent (see appendix drawing) which, when combined with other prior art, made the process of Williams obvious; that failure of the Patent Office to consider Plumb destroys the presumption of validity; and that the finding that Plumb is no more pertinent than prior art considered is clearly in error. Since the process of Williams was both anticipated by other patents and obvious, defendant says it was not patentable under the statutory standards. 35 U.S. C.A. §§ 102 and 103 (Appellant's Brief, 21–25).

The record shows these facts concerning the prior art and issuance of the patent in suit. During prosecution of the application for the Williams patent all the original claims were rejected as being met by four references of prior art cited by the patent Examiner.[6] Williams then made certain amendments, not important here, and renewed his application emphasizing that the "slugs" in his process were unitary bodies dropped one by one to create a flat or nearly flat surface, and that his process was thus distinguishable from the structure and arrangements found in such patents as Brewer and others. When the amended claims were also rejected, an appeal was taken to the Board of Appeals, which agreed with the position of applicant.[7] The patent was issued with the amended claims

---

6. Patents Nos. 2,466,386 (Curioni); 3,110,420 (Brewer); 3,198,386 (Hartley); and 3,344,956 (Thomson). Drawings of the latter three patents are reproduced in the appendix to this opinion.

7. In part the Board of Appeals stated (R. 64E–65E):

We have considered Appellant's disclosure and arguments and share the view that *a useful concept is presented which has not been questioned as to utility or operativeness and which has not been demonstrated to be old or obvious on the basis of the references.* We do not agree that the claims are so lacking in definition as to be fully met under 35 U.S.C. 102 by Thomson. We share Appellant's view that the valve action of this reference is gradual in movement and would reasonably teach the described "flow" rather

than the formation and delivery of "slug" units. In this connection, we interpret the term "slug" as used in the claims as definitive of a collective unit of granular materials dropping as a body rather than as a cascade or flow of the character of a stream. The disclosed and argued spreading action is dependent upon such procedure and the results specified in the claims are inclusive thereof. When we turn to the references, we support Appellant's view that Brewer as well as Thomson releases charge groups by structure which would flow the material in a falling stream rather than as a slug. *While Brewer may form slugs in the feeder, the release under worm gear drive does not maintain such association during free fall.* (Emphasis added).

that now appear in the patent. See note 2, *supra.*

Defendant relies heavily on the Plumb patent, not considered by the Examiner or the Board of Appeals, in attacking the validity of the Williams patent. Plumb does disclose an apparatus for storing and distributing heated asphalt mix (see drawing in appendix). Asphalt is carried to the top of an upright storage bin (14) by an elevator (26). Rather than having the asphalt drop directly into the bin, however, the material is first accumulated in the segmented pockets (troughs) of a vane type apparatus (32). The vane type rotor is driven in a manner to introduce a limited quantity of mix into the bin at intervals, purportedly for the purpose of preventing segregation of the asphalt.[8] The specifications further disclose the use of a baffle construction (not shown in the drawing) located below the vane type apparatus (32) for the purpose of moving the mix toward the sidewall of the inner housing as it falls therein. (R. 131E, col. 3, lines 33–55). Other uncited prior patents were also introduced at trial, but we are convinced they do not undermine the validity of the Williams patent and they need not be discussed. We thus focus on Plumb.

The only testimony concerning the Plumb patent came from plaintiff's expert, Fidler, who testified that the vane type feeder (32) in Plumb is the same type of feeder (20) shown in the Brewer patent, which was considered (see Brewer drawing in the appendix). He pointed out that Plumb contains teachings directed away from the patent in suit because the use of a baffle construction underneath the vane type feeder directs the mix toward the wall of the bin and absorbs the kinetic energy of the falling mix (R.142–43). This, of course, is contrary to the concept of Williams' use of kinetic energy to spread the material in the bin outwardly without segregation, as discussed earlier.

The expert's conclusion was that while Plumb is more pertinent than Brewer in that it discusses the problem of segregation, it is less pertinent in dealing with it and is therefore no better reference of prior art than Brewer, which was considered by the Patent office. Also as pointed out by the Board of Appeals, material that is released from a vane type feeder as used by Brewer does not maintain "slug" formation under free fall, but rather flows in a falling stream (R. 65E). This observation by the Board of Appeals is entitled to considerable weight, and it diminishes the pertinency of Plumb. Furthermore, Plumb illustrates in his drawing a slight but distinct buildup of material in the storage bin.

With reference to Plumb and the prior art the trial court essentially found that the Plumb solution using a baffle to direct the incoming hotmix to one side of the storage bin (diverting and not using the kinetic energy as Williams does), if a solution, was not that covered by Williams; that with the Plumb structure, hotmix tends to build up and create segregation; that the prior art of Plumb is no more pertinent than that considered by the Patent office; that the prior art does not anticipate the claims in Williams; and that those claims would not have been obvious to one of ordinary skill in the art at the time of the invention.

██ In view of the proof discussed and the record as a whole, we are satisfied that the findings are not clearly erroneous. *Scaramucci v. Dresser Industries, Inc.*, 427 F.2d 1309, 1313, 1316 (10th Cir.). In order for a prior art patent to anticipate a process, it must disclose identical or equivalent steps to accomplish the same result, *Celite Corp. v. Decalite Co.*, 96 F.2d 242, 248 (9th Cir.), cert. denied, 305 U.S. 633, 59 S.Ct. 101,

---

**8.** In describing the general concept of the vane type apparatus, Plumb states (R. 130E, col. 2, lines 8–15):

> If required a trough of a predetermined volume may be employed for periodically introducing a measured quantity of the material into the inner silo of the storage container.

> *The trough as contemplated for use will thus prevent constant pouring of the mix within the inner container and thereby will prevent separation of the mix components* and will further prevent bridging of the material if such bridging tends to occur. (Emphasis supplied.)

83 L.Ed. 407, and this Plumb does not do, for reasons outlined above. We thus sustain the finding that the prior art did not anticipate the patent in suit within the meaning of 35 U.S.C.A. § 102.

There remains the question of obviousness, for even though an invention may not be identically disclosed by prior art, a patent may still be denied if the differences between the subject matter and prior art are such that the matter as a whole would have been obvious at the time of invention to a person having ordinary skill in the art. See 35 U.S.C.A. § 103. In deciding the question of obviousness the points that must be considered are clear: the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art must be resolved. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 556. The trial court's findings on these points as to obviousness involve fact questions. *Moore v. Shultz*, 491 F.2d 294, 300 (10th Cir.), cert. denied, 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161. Our inquiry is thus whether the findings are adequately supported by the record as a whole, or are clearly erroneous, although the ultimate question of patent validity is, of course, one of law. *Graham v. John Deere Co., supra*, 383 U.S. at 17, 86 S.Ct. at 693, 15 L.Ed.2d at 556; *Scaramucci v. Dresser Industries, Inc.*, 427 F.2d 1309, 1313 (10th Cir.). As defendant says, under this standard it may be held that the process was obvious, as a matter of law. See, *e. g., Blish, Mize and Silliman Hdwe. Co. v. Time Saver Tools, Inc.*, 236 F.2d 913, 916 (10th Cir.), cert. denied, 352 U.S. 1004, 77 S.Ct. 565, 1 L.Ed.2d 549; *Research Corp. v. NASCO Industries, Inc.*, 501 F.2d 358, 362 (7th Cir.), cert. denied, 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688.

While we must agree that the question is substantial, we feel the trial court considered the aspects of the issue thoroughly, determining the scope and content of prior art and relevant differences from the patent in suit. Plaintiff's expert did not develop in detail his skill in the art, but his credentials were ample for acceptance of his opinion as a basis for the findings. *M. B. Skinner Co. v. Continental Industries, Inc.*, 346 F.2d 170, 173 (10th Cir.), cert. denied, 383 U.S. 934, 86 S.Ct. 1062, 15 L.Ed.2d 851. True, the process and plaintiff's apparatus adopting it do not appear complex. However, simplicity alone is not the test as long as the steps taken are not obvious to the ordinary artisan. See *A. E. Staley Mfg. Co. v. Harvest Brand, Inc.*, 452 F.2d 735, 739 (10th Cir.), cert. denied, 406 U.S. 974, 92 S.Ct. 2415, 32 L.Ed.2d 674. Although defendant strenuously disagrees, we do not think Plumb's naked assertion that periodic introduction of mix will prevent segregation is a clue that should have rendered the Williams invention obvious, in light of the fact that Plumb as a whole contains teachings that are opposed to the principles employed in the Williams process. When teachings in a prior art patent must be ignored in order to reach a desired result, they become less pertinent to the determination of obviousness. *Uarco, Inc. v. Moore Business Forms, Inc.*, 440 F.2d 580, 585 (7th Cir.), cert. denied, 404 U.S. 873, 92 S.Ct. 91, 30 L.Ed.2d 117; cf. *United States v. Adams*, 383 U.S. 39, 51–52, 86 S.Ct. 708, 714, 15 L.Ed.2d 572, 580.

Since more pertinent art was not ignored, the statutory presumption favoring validity was not weakened. *Uarco, Inc. v. Moore Business Forms, supra*, at 585. In fact, here the presumption was enhanced by issuance of the patent only after controversy in the Patent office and review by the Board of Appeals, although the presumption may be overcome by clear proof. *S. H. Kress & Co. v. Aghnides*, 246 F.2d 718, 721 (4th Cir.), cert. denied, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 189; *Celanese Corp. v. Essley Shirt Co.*, 98 F.2d 895, 896 (2d Cir.), cert. denied, 307 U.S. 649, 59 S.Ct. 836, 83 L.Ed. 1528. We feel that proof to overcome the presumption and carry the burden of showing invalidity was not made. See 35 U.S.C.A. § 282. In sum, we believe the findings of non-obviousness, no anticipation, and of invention are amply supported and sustain

the conclusion of validity of the Williams patent.

## III

### Infringement

The trial court found that the method employed in defendant's hotmix asphalt storage system provides a continuous stream of hotmix up the conveyor and into the batcher; the mix is collected into "slugs" in the batcher over the bin and each "slug" is dropped into the bind; as each "slug" strikes the material in the bin, a portion of this material and of the "slug" is spread out in the bin by impact; and the mix in the bin forms a body with an upper surface sufficiently flat to prevent rock rolling and segregation. Further, it was found that this method in defendant's system does the same work and accomplishes the same results as the patented method, which was held to be infringed (see Findings of Fact 30–33, R. 19–20).

In addition the court concluded that as a result of representations Standard made long prior to trial, defendant is estopped to deny that the mix is dropped in "slugs" when being loaded into the storage bins by its apparatus. It was also concluded that as a result of Rheinfrank's statements to the Patent Office concerning his patent, defendant is likewise estopped from contending that hotmix loaded into storage bins by its apparatus " . . . builds up (such building would cause rock rolling resulting in segregation)." (See Conclusions of Law 4–6, R. 21–23). These estoppel points will be discussed later, after we address the findings in light of the evidence on the operation of defendant's apparatus.

Defendant argues that the findings and conclusions on infringement are clearly in error. It says that in considering the infringement question, the claims cannot be given any broader interpretation than given by the Patent Office in granting the patent.

It refers to Williams' arguments to the Patent Office where he said, in distinguishing prior art, that his process (used by defendant) involves sudden withdrawal of the bottom of the chamber to allow all of the material to drop in "one body," as opposed to a "flow of material" in Thomson (See R. 53E–54E). Defendant further argues that there is no evidence that its apparatus drops a "slug" of material, the overwhelming weight of the evidence being that it releases a stream of material; and that there is no basis for a finding that the material in defendant's bin has a "flat top," as the term is used in the Williams patent.[9]

There is no substantial dispute on the applicable law. Ordinarily, a method patent is not dependent on the form of apparatus used, and infringement usually may not be avoided merely by making slight variations in the apparatus disclosed in the patent. *Smith v. Snow*, 294 U.S. 1, 11, 20, 55 S.Ct. 279, 283, 287, 79 L.Ed. 721, 727, 732. Without doubt, the overall procedure and apparatus used by defendant bears similarity to that disclosed in the Williams patent. Nonetheless, our inquiry is whether defendant's apparatus and the method it employs performs substantially the same process steps, in substantially the same way, to accomplish substantially the same result. *International Glass Co. Inc. v. United States*, 408 F.2d 395, 400, 187 Ct.Cl. 376.

Our primary question is whether the term "slug" in the Williams claims embraces defendant's process. In order to discern the meaning of terms of art appearing in patent claims, the courts may have recourse to the patent specifications, drawings and file wrapper history. *Doran Coffee Roasting Co. v. Wyott Manufacturing Co.*, 267 F.2d 200, 203–04 (10th Cir.); *Duplan Corp. v. Deering Milliken, Inc.*, 370 F.Supp. 769, 772 (D.S.C.1973), aff'd 487 F.2d 459 (4th Cir.), cert. denied, 415 U.S. 978, 94

9. Defendant argues that the reason its Glasgow Batcher avoids segregation is not because of the kinetic energy of "slugs" striking the top surface, but because the tapered batcher discharges a relatively large diameter stream which captures the rocks as they pile up and before they have an opportunity to roll down the inclined surface (Appellant's Brief, 18–19; R. 94, 173–78).

S.Ct. 1565, 39 L.Ed.2d 874. Moreover, the patent applicant is bound by the definition of terms suggested to, and accepted by, the Patent Office. *Thabet Manufacturing Co. v. Kool Vent Metal Awning Co.,* 226 F.2d 207, 210–11 (6th Cir.). Thus, the term in question—"slug", as opposed to "stream" or "cascade"—must be considered as defined by Williams to the Patent office and accepted by it.

As stated earlier, in prosecuting his application Williams faced objections of the Examiner that his claims were fully met by the prior art. (See *e. g.,* the drawings on Hartley and Thomson in the appendix to this opinion). Williams responded by distinguishing his process from the continuous-flow feature of Hartley, emphasizing that the material moves in "slugs" in his process, as opposed to a flow of sand.[10] Again Williams responded to the Examiner's reference to Thomson by arguing that Thomson described a process with a "flow of material" instead of the discharge of "one body" of material as is observed in Williams' own process.[11] Moreover, the definitions and distinctions argued by Williams were adopted by the Board of Appeals as a basis for issuing the patent to Williams. The Board's opinion states in part:

> We share Appellant's view that the valve action of [Thomson] is gradual in movement and would reasonably teach the described "flow" rather than the formation and delivery of "slug" units. In this con-

nection, *we interpret the term "slug" as used in the claims as definitive of a collective unit of granular materials dropping as a body rather than as a cascade or flow of the character of a stream. The disclosed and argued spreading action is dependent upon such procedure* and the results specified in the claims are inclusive thereof. (Emphasis added.)

Thus, these are the controlling definitions and distinctions which we must consider in deciding the infringement question. With this critical background in mind, we turn to the evidence before us concerning the infringement issue.

Our record evidence consists of the testimony of several witnesses who had observed the operation of Standard's Surg-Stor system and the Glasgow Batcher incorporated into it. The witnesses testified that the hotmix flowed out of the batcher as a steady or continuous stream (R. 155, 159). There was testimony that when the leading edge of the material first hits the bottom of the bin, there is still a steady stream flowing out of the batcher during the interval of about four seconds when the mix is falling (R. 160, 174–75). These descriptions were made of a Surg-Stor system in Missouri, depicted in a movie observed by the trial court and by us. Defendant's engineer testified that the appearance of the stream at defendant's plant was essentially the same (R. 162).[12] The movie shows a

---

10. In his response to the Examiner concerning the reference to Hartley, Williams stated(R. 34E):

> In [Hartley], the [gates 20] operate only once and that is when the [receiving bin 12] is empty, and after this single operation the rest of the sand flows unimpeded into the [receiving bin] to fill it up nearly to the top.
>
> In contrast with the above, *applicant moves all of the material successively in slugs* and this is essential to form the even distribution of the particles, which is essential in the filling operation. The operation is shown best in FIGS. 2 and 3. It is the dropping of the slug successively which brings about the distribution, and *it is important that all of the material drop in the form of successive slugs* to bring about this important new result. (Emphasis added.)

11. In arguing that Thomson was not relevant prior art, Williams responded to the Examiner, stating in part (R. 42E–43E):

> The Thomson patent describes a process in which a chamber having a central opening through which an elongated valve body 25 in the shape of a barrel moves . . . When the valve is raised, as shown in FIG. 2, there is a flow of the material outwardly as the valve moves upwardly. . . . The patent describes this as a flow of material and it is clearly not a case like that shown in applicant's specification *where the bottom of the chamber is suddenly withdrawn so as to allow all of the body to drop in one body into the chamber below.* . . . (Emphasis added.)

12. We have carefully reviewed a comparison of the dimensions and statistics of operation of the two systems and although the Missouri

stream of hotmix striking the bottom of the bin while the material is still being discharged for an appreciable period of time from the batcher. Several still photos in our record clearly show the same continuous flow of material extending from the batcher to the hotmix collecting in the bin (Def.Ex. 8g, 9a, 9b and 9c, R. 167E–170E).

There is no direct contradiction in the record of this testimony and demonstrative proof. The only detractions from it appear in advertising materials used by Standard. There is an animated portrayal of the batcher's operation in an advertising film used by Standard. This film does show rapid action by the batcher and it depicts the material being discharged as a lump or body into the bin. Also in several advertising brochures distributed by Standard the material discharged from the batcher is described variously as a "two-foot diameter mass," a "charge," and "a big lump." Pl.Ex. 29, 17; R. 81E, 7; R. 80E, 22A; R. 82E, 3). These later references were those described by the trial court as being "synonymous with a 'slug' and certainly far from a continuous stream as provided by the drag slate conveyor," as a predicate for the finding that the mix is collected into "slugs" in defendant's batcher. (Finding of Fact No. 30.)

■■■ We recognize that statements in an alleged infringer's advertising may often be probative in deciding the question of infringement, but as mere admissions they cannot serve to controvert what is clearly demonstrated to be the actual fact. The record evidence as a whole, and particularly the movie and still photographs, are overwhelmingly convincing to us. During the

interval of about four seconds when the gates on the Glasgow Batcher are open (R. 166–67), the hotmix does flow as a stream or cascade as opposed to a "slug," as that term was distinctly defined by the applicant and the Board to distinguish prior art. Plaintiff, as assignee of the patent, is not now entitled to broaden the definition when making a charge of infringement. *Chicago Steel Foundry Co. v. Burnside Steel Foundry Co.*, 132 F.2d 812, 814–15 (7th Cir.); *cf. Doran Coffee Roasting Co. v. Wyott Manufacturing Co., supra*, 267 F.2d at 203–04; *International Glass Co. v. United States, supra*, 408 F.2d at 405.

■■■ In view of the controlling definitions of the terms, on the entire evidence we are left with the definite and firm conviction that the findings on infringement were in error, and must be set aside. *Zenith Radio Corp. v. Hazeltine*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129, 151. Even though the variation in defendant's apparatus is slight, we conclude that the method practiced does not substantially follow the mode taught in the patent in suit and there is no infringement. *Universal Oil Products Co. v. Globe Oil & Refining Co.*, 322 U.S. 471, 485, 64 S.Ct. 1110, 1116, 88 L.Ed. 1399, 1407; *International Glass Co. v. United States, supra*, 408 F.2d at 401.

There remains the question of estoppel. As noted, the trial court held that defendant Metropolitan was estopped to deny that mix is dropped in "slugs" into its storage bin, in view of representations made in Standard's advertising long prior to trial.[13]

■■■ We agree that it was proper for the trial court to consider the representations made by Standard in deciding the fact

apparatus is not identical to that employed by defendant, we are satisfied that the film is an accurate representation of the accused method. The Missouri apparatus (R. 157–58, 160, 166–72; R.Vol. XI, 107); the Metropolitan apparatus (R. 73–74, 161–62, 166–72, 77E).

**13.** It was also held that the defendant was estopped from contending that hotmix loaded into its bin builds up. (This contention was advanced before the trial court and on appeal as a basis for showing that no infringement has occurred.) As a basis for this estoppel holding,

the trial court cited an argument made by Rheinfrank in the prosecution of his application in the Patent Office.

Since we conclude that the process in defendant's apparatus is distinguished from that of the dropping of "slugs" as taught by plaintiff's Williams patent, and that this distinction itself is sufficient to avoid a finding of infringement, we need not treat this additional theory of estoppel related to whether material builds up or forms a flat top in the defendant's apparatus.

questions. They are admissions by one in substantially the same relation to the subject matter, and were thus admissible and relevant. See *Johnson & Johnson v. Carolina Lee Knitting Co.*, 258 F.2d 593, 599 (4th Cir.); *Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc.*, 188 F.Supp. 248, 254 (N.D.Ill.), aff'd 298 F.2d 36 (7th Cir.). However, we do not feel that the statements were conclusive or formed a proper basis for an estoppel. See *Berkey Photo, Inc. v. Klimsch-Repro, Inc.*, 388 F.Supp. 586, 594 (S.D.N.Y.); *Bauer Patent Corp. v. Westinghouse Electric Corp.*, 193 F.Supp. 868, 872–73 (W.D.N.C.). The estoppel principle to be followed is that " . . he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." *Lukens Steel Co. v. American Locomotive Co.*, 197 F.2d 939, 941 (2d Cir.). The essential elements of such an estoppel are not shown in our record. Thus, we must hold that defendant was not estopped from contending that material was not discharged in "slugs" in its apparatus, and was not barred from developing its proof to the contrary. The proof as a whole convinces us that the findings on infringement cannot stand.

Accordingly, the judgment is affirmed as to the holding of validity of the patent in suit; the findings and conclusions of infringement, and the portion of the judgment granting relief for infringement, are set aside; and the case is remanded for disposition in accordance with this opinion. See Appendix on next page.

APPENDIX

Fig. 1

Fig. 2

Fig. 3

M. A. Williams
Slug Filling of Bins
April 15, 1969
Patent No. 3,438,520

886

Fig. 2

Fig. 1

L. Rheinfrank, Jr.

Apparatus for Loading Hotmix
   in a Surge Bin

December 11, 1973

Patent No. 3,777,909

Fig. 3

N. Brewer

Control Means for Solid Dispens-
ing Apparatus (Fig. 1)

November 12, 1963

Patent No. 3,110,420

C. C. Plumb

Apparatus for Storing and Distrib-
uting Heated Asphalt Mix (Fig. 3)

February 21, 1967

Patent No. 3,305,138

C. Thomson

Solids Handling Equip-
ment (Fig. 2)

October 3, 1967

Patent No. 3,344,956

N. Hartley

Constant Volume Feeder for
Flowable Granular
Material (Fig. 1)

August 3, 1965

Patent No. 3,198,386