**NORFIN, INC., Plaintiff-Appellee,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant-Appellant.**

No. 78–1620.

United States Court of Appeals, Tenth Circuit.

Argued March 11, 1980.
Decided July 7, 1980.

Granger Cook, Jr., Chicago, Ill. (John R. Crossan, Chicago, Ill., with him on the brief), of Cook, Wetzel & Egan, Ltd., Chicago, Ill. (Philip G. Dufford of Welborn, Dufford, Cook & Brown, Denver, Colo., with him on the brief), for plaintiff-appellee.

William K. Kerr, New York City (Henry J. Zafian, New York City, with him on the brief), of Fish & Neave, New York City (Donald C. McKinlay of Holme Roberts & Owen, Denver, Colo., with him on the brief), for defendant-appellant.

Before SETH, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

International Business Machines Corporation (IBM) appeals from an adverse judgment after a jury trial in a patent infringement action brought by Norfin, Inc. (Norfin) as assignee of United States Patent No. 3,414,254 ('254), a machine for automatically collating duplicate document pages.

In the early 1960's, Norfin began manufacturing and marketing a machine capable of automatically collating duplicate copies as they came from a printing press or duplicating machine. This machine, commonly called a "collator", was designed by Norfin's chief engineer, Bernard Pearson, who obtained United States Patent No. 3,273,882 for the collator. This patent was assigned to Norfin. Inherent within the Pearson collator were a series of pivoting deflectors, which, when operative, deflected the sheets to be collated into a column of receiving bins. An indexing arrangement successively activated the deflectors so that each bin received a copy of the same page in proper sequence. The Pearson collators were successfully marketed by Norfin.

In 1964, Willard Sauerbrey, then reproduction chief of the aerospace division of Boeing, was a Pearson collator user. Sauerbrey testified that the Pearson collator had a number of disadvantages, including: the wear and tear created by the metal on metal operation of the tripper bars and rollers located at every shelf location; the operation of the collator would "at times" create a "great deal of racket and noise" making it unfit for use in an office area; the wear and tear created a great deal of unreliability and caused "a lot of paper jamming"; and that "Usually at the deflector finger location is where it usually happened [jamming], so it created a great deal of operator dissatisfaction, wasted a lot of time, and there was a high maintenance factor associated with that design." [R.Jt. App., Vol. I at p. A–101].

Part of Sauerbrey's job at Boeing was to maintain contact with manufacturers of office equipment to try and influence the manufacture of equipment which would be more efficient and "would advance the state of the art for our needs". Within this posture, Sauerbrey contacted Donald Snellman, founder and president of Norfin, and related that Boeing required collators which were: reliable; required very little operator involvement; were very quiet and operable in office environment; rather inexpensive—less inexpensive than the multiple parts, the many moving parts incorporated in the previous designs.

On January 17, 1966, a patent application was submitted for a "sheet collating device" by Snellman and Jack Keeler, a Norfin employee. A patent, United States Patent No. 3,414,254 ('254), the patent at issue herein, was issued on December 3, 1968, to Norfin, as assignee of the applicants. Inherent within the '254 was a single deflector assembly moving from bin to bin instead of the series of pivoting deflectors utilized in the earlier Pearson collators. In answer to IBM's interrogatories, Norfin acknowledged that the invention of '254 was "conceived" by Snellman and Keeler prior to January 25, 1964, and that, in arriving at the design of the '254 patent, Norfin modified and improved on a collator design similar to that described in Pearson United States Patent 3,273,882. [R.Jt.App., Vol. I at p. A–714].

In December, 1964, more than one year prior to the filing of the Snellman-Keeler '254 application, Norfin shipped to Lockheed Missiles and Space Company of Sunnyvale, California, a "collator, terminal, Norfin Model 26". Norfin introduced four written exhibits relative to this shipment, which included: Exhibit 14A, a "Request to Purchase", apparently a shipping order for the collator to Lockheed which indicates, *inter alia*, the collator was shipped for a "trial and loan clause", the collator was shipped "LOAN–FOR TEST AND EVALUATION", "consigned at No charge from December 7, 1964 thru January 7, 1965"; Exhibit 14B, a Collator Corporation (predecessor to Norfin) invoice which stated "(The above machine is being shipped on a memo billing for test and evaluation per Jim Murphy.)"; Exhibit 14C, a Lockheed "Receiving Memo" which acknowledged receipt of the collator at "No Charge" and stated "This order covers items or materials consigned to Lockheed for Trial or Loan at No Charge" and "Consignment in on (Trial/Loan), to be returned to Seller . . . Jan. 7, 1965, . . ."; Exhibit 14D, a Lockheed "Change Notice" which stated "Consignment on (Trial/Loan), to be returned to Seller on . . . January 25, 1965" and "REASON: To extend term through January 26, 1965".

During 1968 IBM asked one of its engineers, Jesse Spears, to design a collator for proposed IBM copier, Model 7400. Spears worked extensively on a collator throughout 1968 and on October 8, 1969 filled out an "IBM Invention Disclosure" marked "IBM confidential" for a "collator for 7400 machine". Spears' designs were used as the basis for subsequent developmental work at IBM leading to the marketing in March, 1976, of the IBM Series III office copier and associated collator. (In its answers to Norfin's interrogatories, IBM stated it first became aware of the '254 patent on November 26, 1969.)

Norfin filed its infringement action against IBM on March 16, 1976, alleging that IBM "has been and still is" infringing its '254 Letters Patent by manufacturing, selling, and using collating devices (IBM Series III collator) embodying the patented invention and that such infringement "is willful and deliberate".

By order of April 22, 1977 the district court directed the action bifurcated for separate trial on liability and damages. Thereafter, in a pretrial order, the parties agreed that the contested issues to be determined at the trial on liability would include:

(1) Whether United States patent 3,414,254 is valid and enforceable in law.

(2) Whether the subject matter of United States patent 3,414,254 was in public use or on sale in this country more than one year prior to January 17, 1966, including:

   a. Whether the subject matter of the '254 patent was in public use at Lockheed Missiles and Space Company, Inc. in Sunnyvale, California prior to January 17, 1965;

   b. Whether the subject matter of the '254 patent was offered for sale to Lockheed Missiles and Space Company, Inc. by Norfin prior to January 17, 1965.

(3) Whether the oaths of the patentees were false in that such oaths included statements that the subject matter had not been in public use or on sale more than one year prior to filing of the application of the '254 patent.

(4) The differences between the prior art and the claims of the patent in suit relied on by plaintiff.

[R.Jt.App., Vol. I at p. A–5].

On March 28, 1978 a jury of six returned a special verdict in favor of Norfin, finding that: IBM infringed '254; IBM's infringement of '254 was willful and deliberate; a Norfin collator shipped to Lockheed in December 1964 was used for Norfin's experimental purposes; "a collator defined by any of claims . . . of the '254 Snellman Patent" was not in public use or on sale more than one year prior to January 17,

1966; and that the '254 invention would not have been obvious to a person possessing ordinary skill in the pertinent art. Thereafter, on April 13, 1978, the district court entered an order adopting each finding of the jury as its own and deferred ruling on increased damages and attorney fees until after the damages trial.

Trial on the amount of damages took place during the period September 25 to October 6, 1978, after which the jury awarded $7,500,000 to Norfin as damages for lost profits for the period March 1976 through June 1978. On November 8, 1978 the district court entered an order approving the special verdict, denying increased damages, and awarding attorney fees and costs.

On appeal IBM contends: (1) the patent claims in suit are invalid because their subject matter was "in public use or on sale" more than a year before the application was filed; (2) there is no evidence from which the jury could have reasonably found, as it did, that other prior art should not have been considered by the patent office on the issue of obviousness; (3) the patent claims in suit are invalid for obviousness; and (4) the findings of willful and deliberate infringement lack any support in the evidence.

## I.

IBM contends that the '254 claims are invalid because their subject matter was "in public use or on sale" more than a year before the patent was filed, and that the jury's finding to the contrary lacks any support in the record. Further, IBM argues that the trial court erroneously instructed on this defense.

Under 35 U.S.C.A. § 102(b) a person is entitled to a patent unless—

The invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . .

As noted *supra*, the application for the '254 invention was filed on January 17, 1966,

and a Norfin collator was sent to Lockheed Missiles in early December 1964. IBM argues, as it has consistently throughout, that the collator shipped to Lockheed embodied the alleged invention of the patent in suit and that the circumstances surrounding the Lockheed use put that alleged invention "in public use" and "on sale", invalidating the patent.

In support of this argument, IBM states that "The jury found that the collator later patented by Norfin was in use at Lockheed more than one year before the filing date of the patent application." [Appellant's Br. at p. 16], and "The Norfin collator sent to Lockheed in December 1964 (which the jury found to embody the '254 patent construction) was not received under any restriction of confidentiality." [Appellant's Br. at p. 24].

Within its special verdict the jury found, *inter alia*:

PUBLIC USE AND ON SALE ISSUE

QUESTION NO. 7: Do you find by clear and convincing evidence that the subject matter of either Claims 1, 2, 8, 9 or 10 of the '254 Snellman Patent was embodied in the collator sent to the Lockheed Company in December, 1964?

ANSWER NO. 7: *yes* (Yes or No)

QUESTION NO. 8: Do you find by clear and convincing evidence that the Norfin collator shipped to Lockheed in December 1964, was used for Norfin's experimental purposes?

ANSWER NO. 8: *yes* (Yes or No)

QUESTION NO. 9: Do you find by clear and convincing evidence that a collator defined by any of Claims 1, 2, 8, 9, and 10 of the '254 Snellman Patent was in public use (not Norfin's experimental use) or on sale more than one year prior to January 17, 1966?

ANSWER NO. 9: *no* (Yes or No)

[R.Jt.App., Vol. I at p. A–56].

As noted *supra*, the district court adopted each of these findings as its own.

These findings of fact may not be set aside unless we determine that they are clearly erroneous. *Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products, Inc.*, 597 F.2d 201 (10th Cir. 1979); *Rutter v. Williams*, 541 F.2d 878 (10th Cir. 1976); *CMI Corp. v. Metropolitan Enterprises, Inc.*, 534 F.2d 874 (10th Cir. 1976). We do not try factual matters *de novo*. *Halliburton Company v. Dow Chemical Company*, 514 F.2d 377 (10th Cir. 1975), and we cannot, absent clear error, substitute our judgment for that of the trial court. *Maloney-Crawford Tank Corp. v. Sauder Tank Company, Inc.*, 511 F.2d 10 (10th Cir. 1975).

IBM argues that Norfin's shipment of the collator to Lockheed caused the '254 to be "in public use" and "on sale". We disagree. Norfin's Exhibits 14A–14D, as set forth *supra*, all clearly indicated that the collator was not sold to Lockheed and that it was being shipped on a loan basis for tests and evaluation. As such, '254 can not be considered invalid under § 102(b). In *McCullough Tool Company v. Well Surveys, Inc.*, 343 F.2d 381 (10th Cir. 1965), *cert. denied*, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966), we observed:

McCullough next contends that the method and apparatus disclosed in Swift was in public use for more than a year prior to the filing of the application for patent and, therefore, it is invalid under 35 U.S.C.A. § 102(b). The device was first conceived in May, 1944, and the application for patent was not filed until March, 1946. Section 102(b) provides that a person shall not be entitled to a patent if his invention has been in public use for more than one year prior to the application. [Citation]. *A single public use is sufficient to render a patent invalid.* [Citation]. *But not every use is a public use within the meaning of the statute.* [Citation]. *The good faith use of the device or apparatus for experimental purposes is not a public use within the intent and meaning of the statute.* [Citations]. *During an experimental period, the inventor may freely use his device* " * * * *for the purpose of testing the machine* * * * *"*, [Citation], or "* * * in order to bring the invention

to perfection * * * ", [Citation], and the statutory period does not commence to run.

Public use is defined as " * * * [t]he ordinary use of a machine or the practice of a process in a factory in the usual course of producing articles for commercial purposes * * * ". [Citation]. The burden is upon the one asserting prior public use to establish it by clear, cogent and satisfactory proof to remove all reasonable doubt thereof; but when a use is shown that has occurred prior to the statutory period, it is incumbent upon the patentee to show that such use was experimental only. [Citations]. *The issue of whether a use of the device is experimental or public is one of fact.* [Citations]. *And, the trial court's finding in this respect is binding upon the Court of Appeals unless it is clearly erroneous.* [Citations]. [Emphasis supplied].

343 F.2d at p. 393–394.

Under *McCullough, supra,* Norfin had the right to "freely use" the collator for the purpose of "testing" it without having the statutory period commence to run. Norfin's shipment was clearly outside "the ordinary use of a machine", and therefore not a public use, particularly when, as here, it cannot be logically argued that Norfin actually sold Lockheed a collator in December 1964. *See also:* *Universal Marion Corporation v. Warner & Swasey Company,* 354 F.2d 541 (10th Cir. 1965), *cert. denied,* 384 U.S. 927, 86 S.Ct. 1444, 16 L.Ed.2d 530 (1966); and *Merrill v. Builders Ornamental Iron Co.,* 197 F.2d 16 (10th Cir. 1952).

IBM contends that the trial court erroneously instructed on the defense of "in public use". Within Instruction No. 20 the Court charged the jury:

The patent statutes provide that no valid patent may be granted where the subject matter of the patent was in public use or on sale in this country more than one year prior to the date of the application for patent.

You should determine whether the '254 collator as defined in each of the asserted claims, 1, 2, 8, 9 and 10, was in public use or on sale in the United States more than one year prior to January 17, 1966, the filing date of the application for the '254 patent.

IBM has the burden of proving by clear and convincing evidence:

One, that all elements of the '254 patent as defined by each of the asserted claims, 1, 2, 8, 9 and 10, were present in the collator sent to Lockheed.

And, two, that the '254 collator was actually in public use by Lockheed or offered for sale to Lockheed more than one year prior to January 17, 1966.

The offer for sale does not require that sale actually has been made, but requires only that there has been activity by the inventors or their company in attempting to sell the patented product.

There is one exception to the rule that a public use or offer for sale more than one year before filing the application for patent invalidates the patent. That exception is where the public use or offer for sale was experimental.

If you find that IBM has shown that the collator, the patent in suit, was in public use at Lockheed or offered for sale to Lockheed more than one year before January 17, 1966, then it becomes a burden of Norfin to prove by clear and convincing evidence that this public use or offer for sale was experimental and motivated by Norfin's own experimental needs.

The use or offer for sale must be only incidental and necessary to carrying out these experimental needs.

[R.Jt.App., Vol. I at pp. A–835–836].

IBM argues that Instruction No. 20 was inadequate since it failed to include any explanation of "in public use", and that the court erroneously refused its proffered Instruction No. 4 which provided, *inter alia :*

A public use is any use which is not kept secret. That is, it is a use which does not involve restrictions limiting the people who see the use, or requiring that the use be kept confidential.

We hold that the court's refusal to give IBM's tendered Instruction No. 4 was not

clearly erroneous and that Instruction No. 20 as given was adequate under the facts of this case and our opinion in *McCullough Tool Company, supra.* In *McCullough* we stated that "The good faith use of the device or apparatus for experimental purposes is not a public use within the intent and meaning of the statute" and that "[d]uring an experimental period, the inventor may freely use his device . . . for the purpose of testing the machine." IBM's proffered Instruction No. 4 was overly restrictive in defining "public use" and inconsistent with *McCullough.* Thus, the trial court did not err in refusing to give it.

In summary, we hold that the clear weight of authorities is supportive of the jury's special verdict, as adopted by the trial court, that the collator Norfin shipped to Lockheed was not in public use and was used for Norfin's experimental purposes.

We observe at this juncture that the judgment of a district court must be affirmed on appeal if any valid basis is established in the record irrespective of whether it was relied upon by the district court. *Casto v. Arkansas-Louisiana Gas Co.,* 597 F.2d 1323 (10th Cir. 1979); *Fleming Bldg. Co. v. Northeastern Oklahoma Bldg.,* 532 F.2d 162 (10th Cir. 1976); *Carpenters District Council of Denver and Vicinity v. Brady Corporation,* 513 F.2d 1 (10th Cir. 1975). Therefore, even were we to assume, *arguendo,* that Norfin's collator shipment to Lockheed constituted a "public use" or "sale" under § 102(b), such would not, under the facts herein, invalidate '254. Whereas the jury found that the subject matter of *either* Claims 1, 2, 8, 9 or 10 of the '254 Snellman Patent was embodied in the collator sent to Lockheed, it did not find that *all* of the subject matter of Claims 1, 2, 8, 9 or 10 were embodied in the collator. Since separate claims in the same patent are in effect separate inventions, each claim of a patent grants the patentee an exclusive right. *Maloney-Crawford Tank Corp., supra; Bourns v. United States,* 537 F.2d 486, 210 Ct.Cl. 642 (Ct.Cl. 1976); *Timely Products Corporation v. Arron,* 523 F.2d 288 (2d Cir. 1975); *Smith Industries International*

*v. Hughes Tool Company,* 396 F.2d 735 (5th Cir. 1968).

The fact that a particular claim within a patent is invalid, without more, cannot invalidate the entire patent. Thus, the jury's finding, as adopted by the trial court, that the collator shipped to Lockheed embodied the subject matter of *either* of five claims, cannot be considered a proper predicate upon which to invalidate the Norfin '254 invention under § 102(b).

## II.

IBM contends there is no evidence from which the jury could have reasonably found, as it did, that other prior art should not have been considered by the patent office on the issue of obviousness.

Within Question No. 10 of the Special Verdict the jury was asked:

Do you find by a preponderance of the evidence that prior art which should have been considered on the issue of obviousness was not considered by the Patent Office during its examination of the application for the '254 patent?
[R.Jt.App., Vol. I at p. A–37].

The jury answered "no". Its finding was thereafter adopted by the trial court.

IBM argues that the jury's "no" answer to Question No. 10 constituted a finding that the prior art, Wentworth patent (United States Patent No. 2,328,317), which was not considered by the Patent Office, should not have been considered on the issue of obviousness. Such a finding cannot be supported by the record, according to IBM, when, as here, the Wentworth patent embodied a deflector assembly which moved along a conveyor, pausing at pre-selected points to deflect sheets into spaced bins.

We agree that the strong presumption of validity attributable to a properly issued patent is greatly diminished when the patent office has failed to consider relevant prior art. *Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products, Inc., supra.* However, in order for a prior art patent to anticipate a process, it must disclose identical or equivalent

steps to accomplish the same result. *CMI Corporation v. Metropolitan Enterprises, Inc., supra.* The ascertainment of the scope of the prior art and the determination of the difference between the prior art and the claims in a suit are, of course, questions of fact. *Price v. Lake Sales Supply R. M., Inc.,* 510 F.2d 388 (10th Cir. 1974). Such determinations must be upheld if supported by substantial evidence. In *Celebrity, Inc. v. A & B Instrument Co., Inc.,* 573 F.2d 11 (10th Cir. 1978), *cert. denied,* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978), we stated:

> The jury determined specifically that the Barber patent was not anticipated nor obvious in view of the prior art. We conclude that the jury was properly instructed on these issues. Counsel for the plaintiff made no objection to the instructions. This is a factual issue for the jury when properly submitted. *Moore v. Shultz,* 491 F.2d 294 (10th Cir.). The record demonstrates that there was sufficient evidence introduced upon which the jury could base its finding. The issue was fully developed by the witnesses. These witnesses testified at some length as to the prior patents, and there was a detailed comparison presented to the jury.

573 F.2d at p. 12.

The record in the instant case clearly demonstrates that whereas the Wentworth patent was not considered by the Patent Office, it was considered in detail during the course of the trial. Thus, the jury, having considered such additional prior art, could, within the ambit of its fact finding process, correctly determine, in effect, that the Patent Office had already considered the *relevant* prior art. This is particularly true, when as here, IBM's own expert acknowledged that the Wentworth disclosure had no structure corresponding to several of the elements within Claim 1 of the '254 patent.

### III.

#### a.

IBM contends the '254 patent claims are invalid for obviousness and that there is no support in the evidence for a contrary finding or conclusion by the jury or the trial court. In support of this contention, IBM cites to the lack of specific findings on the factual inquiries indicated by *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), i. e., the scope and content of the prior art, the differences between the patent claims and the prior art, and the level of skill in the art.

Even though we acknowledge the lack of specific findings, we nevertheless decline, on this basis, to hold that the nonobvious finding of the jury, adopted by the trial court, was clearly erroneous. In *Tanks, Inc. v. Reiter Industries, Inc.,* 545 F.2d 1276 (10th Cir. 1976), we said:

> As indicated, the trial court found, *inter alia,* that Reiter's patent was invalid under § 103 in that its subject matter was obvious from the prior art. The trial court's findings relating to the scope of the prior art, the difference between the prior art and the claims of the patent whose validity is being questioned, and the level of the ordinary skill in the art, all issues of fact, were perhaps not spelled out in the explicit terms used in *Graham.* However, we have held that the failure by a trial court to use the precise language used in *Graham* is not fatal and that findings of a trial court would be accepted if it were clear from such findings that the trial court had "grappled with the problems." *Rutter v. Williams,* 541 F.2d 878 (10th Cir. 1976) and *Price v. Lake Sales Supply R. M., Inc.,* 510 F.2d 388 (10th Cir. 1974).

545 F.2d at p. 1279.

No less a standard should be applied here.

#### b.

IBM contends that the question of obviousness was improperly submitted to the jury and "that in this Circuit . . . as in all other circuits . . . obviousness is a question of law for a court's ultimate determination." [Appellants Br. at p. 46]. We disagree.

Whereas the ultimate question of patent validity is, of course, one of law,

*Moore v. Shultz,* 491 F.2d 294 (10th Cir. 1974); *Hinde v. Hot Sulphur Springs, Colorado,* 482 F.2d 829 (10th Cir. 1973), obviousness has always been considered a question of fact. *Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products, Inc., supra. See also: John Zink Company v. National Airoil Burner Company,* 613 F.2d 547 (5th Cir. 1980); *Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763 (5th Cir. 1980). And in *Milgo Electronic Corporation v. United Business Communications, Inc.,* 623 F.2d 645 (10th Cir. 1980), we stated:

> Obviousness must be determined by considering the scope and content of the prior art, the differences between the prior art and claims at issue, and the level of ordinary skill in the pertinent art. *Tanks, Inc. v. Reiter Industries, Inc.,* 545 F.2d 1276 (10th Cir. 1976) *citing to Graham v. John Deere Co., supra.* Obviousness requires factual determinations which are entitled to the usual respect accorded determinations of fact, and, as such, an appellate court is bound by the trial court's findings on obviousness unless they are determined to be clearly erroneous. *Rutter v. Williams,* 541 F.2d 878 (10th Cir. 1976); *CMI Corporation v. Metropolitan Enterprises, Inc., supra.* We are not a trial court and a case such as the one at bar cannot be tried *de novo* on appeal. *Halliburton Company v. Dow Chemical Company, supra; Hinde v. Hot Sulphur Springs, Colorado, supra.* These principles were succinctly stated in *True Temper Corporation v. CF&I Steel Corporation, supra,* 10 Cir., 601 F.2d 495:

> > Obviousness, of course, is to be assessed as of the time the invention in question was made and from the viewpoint of "a person having ordinary skill in the art to which said [invention] pertains." 35 U.S.C. § 103. The issue necessarily involves several basic factual inquiries, outlined in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545, involving the scope and content of the prior art, the differences between the prior art and the patent claims in issue, and the level of ordinary skill in the pertinent field. There

is also to be considered, however, the general statutory presumption of validity which attaches to a patent once issued by the Patent Office. 35 U.S.C. § 282. See generally *Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products, Inc.,* 597 F.2d 201 (10th Cir. 1979). We must, therefore, in reviewing the findings of the trial court, consider whether they are supported by the record or are clearly erroneous under the standard of Rule 52, F.R.Civ.P., taking into account the presumption of validity of the patent. *See CMI Corp. v. Metropolitan Enterprises, Inc.,* 534 F.2d 874, 880 (10th Cir.)

> > 601 F.2d at p. 505.

> At pp. 654–655.

That obviousness must always be considered a factual question within the parameters of *Graham, supra,* is even clearer, when, as here, we are dealing with a combination patent, every element of which is conclusively presumed to be essential. *Maloney-Crawford Tank Corp., supra, McCullough Tool Company, supra.* Breaking down a design combination, or, as here, a combination patent into its various known components, is an impermissible basis for claiming obviousness. *Sidewinder Marine, Inc., supra.* Such questions of fact must be considered initially by the finder of fact. In the final analysis, while there was conflicting testimony on the issue of obviousness, we hold that there was sufficient evidence upon which the jury could correctly find, as it did, that the '254 invention was not obvious. *See Griswold v. Oil Capital Valve Co.,* 375 F.2d 532 (10th Cir. 1966).

We observe at this juncture that both parties noted within their respective supplemental memoranda the conflict in *Plastic Container Corp. v. Continental Plastics,* 607 F.2d 885 (10th Cir. 1979) and *True Temper Corporation v. CF&I Steel Corp.,* 601 F.2d 495 (10th Cir. 1979) and *Deere & Co. v. Hesston Corp.,* 593 F.2d 956 (10th Cir. 1979), vis-a-vis the requirement for synergism in combination patents. We acknowledge this conflict. However, we leave its resolution for a later day. In so doing, we hold that

the '254 invention was patentable under either *True Temper, supra, Deere, supra,* or *Plastic Container Corp., supra.*

## IV.

■ IBM contends the finding of willful and deliberate infringement is without support in the record and that the trial court erred in not admitting written opinions of its patent counsel as evidence that it acted in good faith.

The finding of willful and deliberate infringement, was, of course, a question of fact for the jury. *Celebrity, Inc. v. A & B Instrument Company, Inc., supra.* Thus, a jury's finding of willful and deliberate infringement must stand, unless determined to be clearly erroneous.

■ Norfin presented evidence indicating that IBM had been aware of the '254 patent since 1969; IBM was aware of the commercial success of the '254 collator; the first drawings of the IBM Series III collator followed, almost directly, observations by IBM collator design personnel of a Norfin '254 collator; and IBM sought a waiver of rights from Norfin for the inspection of a Norfin collator in 1974, and upon Norfin's refusal to agree to such a waiver, canceled the inspection. We hold that these circumstances constitute substantial evidence upon which the jury could properly find that the infringement herein was willful and deliberate.

AFFIRMED.