**Phillip OINESS, an individual residing in the State of Washington, and Sun Products Group, Inc., a Washington corporation, Plaintiffs,**

v.

**WALGREEN COMPANY, an Illinois corporation, Atico International Incorporated, a Delaware corporation, formerly known as J & M Enterprises, d/b/a Atico, and New Atico International, Ltd., a Delaware corporation (a wholly owned subsidiary of Atico International Incorporated) d/b/a New Atico and a/k/a Atico, Defendants.**

Civ. A. No. 90–F–727.

United States District Court,
D. Colorado.

June 28, 1991.

Order on Motion to Alter or Amend
Aug. 9, 1991.

James A. Lowe, James A. Lowe, P.C., Duane Burton, Denver, Colo., for plaintiffs.

Robert E. Benson, Gregg I. Anderson, Holland & Hart, Denver, Colo., Jerome M. Berliner, Ostrolenk, Faber, Gerb & Soffen, New York City, Stephen A. Soffen, Ostrolenk, Faber, Gerb & Soffen, Washington, D.C., for defendants.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

THIS MATTER comes before the court on several post-trial Motions: Defendants' Motion for Judgment Notwithstanding the Verdict and Plaintiffs' Motion for a New Trial on the Issue of Damages, and for Prejudgment Interest, Costs, Increased Damages, and Attorneys' Fees. By this Order we deny defendants' Motion for Judgment Notwithstanding the Verdict and plaintiffs' Motion for a New Trial on the issue of damages and for prejudgment interest and fees, and grant plaintiffs' request for increased damages based upon a finding of willful infringement.

This suit involves claims of infringement of United States Patent 4,544,203 (later reference 203) and conspiracy to infringe the same. Patent 203 involves a folding headrest product designed for use while reclining at the beach, the park, or other outdoor locations. The jury returned an unanimous special verdict in which it found that: (1) plaintiff Oiness owned the entire right, title, and interest in the patent in suit, (2) defendants infringed the patent, (3) the infringement was willful and deliberate, (4) the patent claims would not have been obvious to a person having ordinary skill in the pertinent art, and (5) defendants did not conspire to infringe the patent. The jury awarded $300,000.00 in actual damages for the infringement and denied exemplary damages. *See* Special Verdict Form, Appendix A. Judgment was entered on May 20, 1991. Execution of the judgment has been stayed.

As to legal and equitable issues not before the jury, the following includes and constitutes our findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).[1] By this Order, we also consider and adjudicate the post-trial Motions.

Chronology of Events:

The patent in suit, No. 203, was issued on October 1, 1985 to Steven K. Younger and Rudolf A. Fiedelak. The patent is for a foldable headrest, which plaintiffs later marketed under the name Headchair.[2] All headrests marketed before issuance of the patent were marked "U.S. Patent Applied For." Headrests marketed after that date were stamped with a patent notice. Younger and Fiedelak were co-inventors of the product. Defendant Walgreen is a national drug store chain with approximately 1600 stores in 31 states. Forty stores are located in Colorado. Defendant Atico is a trading company which locates and supplies products for defendant Walgreen.

---

1. Fed.R.Civ.P. 52(a) states, in pertinent part, that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58." Fed.R.Civ.P. 52(a).

2. The term Headchair is used to refer solely to plaintiffs' product. The Walgreen product is referred to as a headrest or the Walgreen headrest.

Atico sourced the infringing headrest sold in the Walgreen stores.

Younger and Fiedelak formed Sun Global Enterprises, a Washington corporation, to market the Headchair. The product received a great deal of free publicity through magazine articles and television spots. On June 18, 1984, a Venture Capital Agreement was entered into by the co-inventors and other investors. The Agreement provided for an assignment of the Headchair patent by Younger and Fiedelak to Sun Global. In exchange, Younger and Fiedelak signed employment agreements with Sun Global. Testimony indicated that it was the intent of the signatories to the Venture Capital Agreement that all rights in the patent be assigned to Sun Global through the Venture Capital Agreement. The Headchair patent was the sole asset of the corporation.

In 1984, Sun Global entered into a license agreement with a Taiwanese manufacturer, Hyman Products Company. Hyman was to manufacture the Headchair for plaintiffs and thereby avoid the high production costs associated with domestic manufacturing. Hyman also made direct sales of the product. The license provided for a royalty of six percent. The license was, however, terminated in 1985.

Testimony indicated that a formal assignment of all patent rights was executed by Younger and Fiedelak in October 1985. This document was not produced at trial nor are its whereabouts known. The court specifically finds that both co-inventor's interests under the patent were assigned to Sun Global.

In 1985, Sun Global obtained a loan from plaintiff Oiness. The loan was secured by an interest in all of the assets of Sun Global. Sun Global later defaulted on the loan. In December 1985, the employment agreement between Sun Global and Fiedelak was terminated prematurely. Oiness commenced foreclosure on the assets and obtained an assignment of the patent in August, 1986. In January, 1986, Sun Global, a Washington corporation, was administratively dissolved by the Washington Secretary of State.

In June 1986, Oiness incorporated Sun Products Group, Inc., for the purpose of marketing the Headchair. Oiness, Younger, and Dr. George Mayon continued as investors in the new Sun entity. Oiness granted Sun Products an exclusive license under the patent. Sun Products continued to market the Headchair. Sun Products was administratively dissolved by the Washington Secretary of State in 1987.

In 1985 or 1986, an unidentified party approached a Walgreen buyer, John Cochran, with a sample headrest. The headrest was similar or identical to the Headchair product. It was packaged in a box bearing the identical photograph displayed on plaintiffs' box. Cochran gave the sample to Pat Ross, an Atico representative, for sourcing. Atico located a source for the product in Taiwan. The product was approved for sales and advertising by Walgreen. Testimony indicated that Walgreen did not conduct any inquiry into possible patent violations concerning the headrest.

In April 1986, Walgreen test marketed their headrest in Florida. The product was advertised nationally in April 1987 in a newspaper supplement distributed in all Walgreen market areas. The headrest was offered for sale at $.99. The headrest normally sold for between $1.49 and $1.69. Plaintiffs' Headchair was sold at a substantially higher price, usually around $5.00 or $6.00. The price differential resulted in a decrease in the perceived value of the product. Testimony by Walgreen officials indicated that Walgreen purchased approximately 170,000 headrests between 1986 and 1989. Walgreen's gross sales were approximately $200,000.00.

Immediately after viewing the April 1987 advertisement, Younger wrote a letter to the president and the general counsel of Walgreen identifying the claimed infringement. A follow-up letter was mailed to Walgreen from Sun Product's counsel. Walgreen notified Atico of the claimed infringement. Atico turned the matter over to their patent counsel, who determined that, in his opinion, the Walgreen product was noninfringing. The opinion was by no means conclusive or unequivocal. Some

communication ensued, but the matter was not resolved. Plaintiffs filed suit in the present matter in April 1990.

Ownership of the patent:

█ Defendants maintain that judgment notwithstanding the verdict should be entered as neither Oiness nor Sun Products is a proper party to pursue the litigation. It is argued by defendants that plaintiff Oiness, as a mere co-owner of the patent, does not have standing to sue without joining the other co-owner, co-inventor Fiedelak. In response to a special interrogatory on factual issues, the jury found that Fiedelak had conveyed his ownership interest in the patent to Sun Global, Inc. Special Verdict Form, Question No. 2. The jury further found that Oiness was the present owner of the entire right, title, and interest in the patent. Special Verdict Form, Question No. 4. The court cannot say as a matter of law that these findings are not supported by the evidence. The Venture Capital Agreement between the investors of Sun Global Enterprises, Inc., included a provision for transfer of the patent to the company by both co-inventors. Plaintiffs' Exhibit 326. The document was signed by Steven Younger and Fiedelak. Testimony of Steven Younger, Phillip Oiness, and George Mayon, M.D., indicated that the Headchair product was the sole asset of the company, and that the parties to the Agreement believed that the patent had been assigned. Further, Younger testified that an assignment was executed by both Fiedelak and Steven Younger in October of 1985. The assignment was last seen in the possession of Fiedelak. There is adequate evidence to support the jury's conclusion that Fiedelak effectively transferred his interest in the patent to Sun Global. The interest in the patent was then transferred from Sun Global to Phillip Oiness and then to Sun Products. *See* Testimony of Steven Younger, Phillip Oiness.

█ Defendants further contend that Sun Products Group, Inc., is an improper plaintiff as the corporation was administratively dissolved in 1987. Defendants' Exhibit I. The current Sun Products entity was not formed until January 1991. Testimony of Phillip Oiness. Phillip Oiness, George Mayon, and Steven Younger are the directors and shareholders of both Sun Products entities. Testimony indicated that the shareholders had agreed that Oiness would be allowed to pursue the claim on behalf of the shareholders and the corporation. Testimony of Phillip Oiness; Testimony of George Mayon. Under Washington state law, the claims of a dissolved corporation can be brought by the shareholders as successor to the corporation. *See Zimmerman v. Kyte*, 53 Wash. App. 11, 765 P.2d 905 (1988). Neither Sun Products entity is a proper party to this suit; however, Oiness, as a shareholder of Sun Products with consent of the other shareholders, may sue as a successor to the corporation.

Liability of Atico defendants:

█ Section 35 U.S.C. § 271(a) provides that "... whoever without authority makes, uses or sells any patented invention, within the United States during the Term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Defendants assert that no evidence was presented from which the jury could have determined that the Atico defendants make, use, or sell headrests. The Atico defendants clearly are not involved in manufacturing. Testimony of Kenneth Ross. Rather, Atico supplies import merchandise to Walgreen. Testimony of Vernon Bruner.

The evidence presented indicated that Walgreen paid for items sourced by Atico with a letter of credit made payable to Atico, rather than to any foreign suppliers. Testimony of Vernon Bruner. Walgreen had no contact with the manufacturers. Testimony of Vernon Bruner. Atico took the sample headrest provided to John Cochran and located manufacturers who could reproduce the intended product. There is sufficient evidence to support a jury finding that Atico acted as more than a liaison. Indeed, the evidence supports the contention that Atico actually purchased the product from the manufacturers in Taiwan and then resold the product to Walgreen. Atico is subject to liability for infringement.

Sufficiency of the evidence:

 A jury's finding of willful infringement must stand unless it is clearly erroneous. *Norfin, Inc. v. International Business Machines, Corp.,* 625 F.2d 357, 366 (10th Cir.1980). The jury responded affirmatively to special interrogatories relating to the willfulness of the infringement by each defendant. The evidence at trial indicated that defendant Walgreen's buyer was in possession of a headrest with a packaging photo identical to that used by plaintiff. Testimony of John Cochran. The buyer then gave the product sample to an Atico representative for sourcing. Testimony of John Cochran. Under the evidence, the jury could have reasonably determined that the product and package used by the buyer was in fact plaintiffs' Headchair. Further, if the product was the Headchair, the buyer and the Atico representative willfully ignored the patent identification on the product. The evidence additionally supports a finding that Walgreen management made no effort to determine if a patent infringement had occurred before approving the product for sales in the United States. Testimony of Vernon Bruner. Questions of credibility and motivation relating to willfulness are within the province of the trier of fact. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 628 (Fed.Cir.1985). These circumstances constitute substantial evidence upon which the jury could properly find that the infringement of the Headchair patent was willful and deliberate.

██ Defendant also maintains that there was insufficient evidence to support the jury finding that the Walgreen headrest infringed the patent in suit. We disagree. There was ample evidence upon which the jury could have based their finding. Testimony indicated that both products had opened and folded positions. Plaintiffs' Exhibit 1, United States Patent No. 203, Claim 1. The headrests were designed with two flexible rectangular molded plastic frames and fabric panels designed to remain taut when the headrest was in the open position. Exhibit 1, Claim 1. Both had stop connecting means in the frame designed to prevent collapse of the headrest if the panels were sewn incorrectly or if an abnormal load was placed on the device, e.g., a child sitting upon it. Exhibit 1, Claim 1, clause o; Testimony of Steven Younger. Both had a key and slot arrangement designed to hold the two frames together. Exhibit 1, Claim 1, clauses i and j; Claim 3. Both headrests could be disassembled only while in the closed position. Exhibit 1, Claim 2. Although defendants argued that their headrest did not infringe Claim 1, clause o, because the stops were only activated under situations of extreme abuse or gross distortion of the product; the evidence was such that the jury's finding of infringement is supported by the evidence.[3]

Validity of the patent:

 Defendants contend that United States Patent No. 203 is invalid due to the doctrine of obviousness. The ultimate determination of patent validity is a question of law. *Norfin,* 625 F.2d at 365; *Milgo Electronic Corp. v. United Business Communications, Inc.,* 623 F.2d 645, 654 (10th Cir.), *cert. den.,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980). A regularly issued United States patent is presumed valid. 35 U.S.C. § 282; *Lam, Inc. v. Johns–Manville Corp.,* 668 F.2d 462, 469 (10th Cir.), *cert. den.,* 456 U.S. 1007, 102 S.Ct. 2298, 73 L.Ed.2d 1302 (1982); *Central Soya Co. v. Geo. A. Hormel & Co.,* 645 F.2d 847, 849–50 (10th Cir.1981); *Milgo,* 623 F.2d at 654. However, a design that is obvious to a person having the ordinary level of skill in the relevant field is unpatentable. *Graham v. John Deere Co.,* 383 U.S. 1, 3, 86 S.Ct. 684, 686, 15 L.Ed.2d 545 (1966); *Swift Agricultural Chemicals Corp. v. Farmland Indus., Inc.,* 674 F.2d 1351, 1356 (10th Cir.), *cert. den.,* 459 U.S. 860, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982);

3. The jury was allowed to view several exhibitions of product use. Younger demonstrated the workings of the Walgreen headrest while reclining. Numerous witnesses manually put pressure on the headrest to illustrate its functioning. Further, the jury was allowed an opportunity to handle the headrest during trial.

*Lam,* 668 F.2d at 468; *Soya,* 645 F.2d at 850; *Milgo,* 623 F.2d at 654. "Obviousness must be determined by considering the scope and content of the prior art, the differences between the prior art and claims at issue, and the level of ordinary skill in the pertinent art." *Norfin,* 625 F.2d at 365; *Milgo,* 623 F.2d at 654; *True Temper Corp. v. CF & I Steel Corp.,* 601 F.2d 495, 505 (10th Cir.1979). Evidence of copying is admissible on the issue of obviousness. *Milgo,* 623 F.2d at 656. Secondary considerations such as "... commercial success, long felt but unsolved needs, failure of others, etc., ..." may also be considered in determining obviousness. *Graham,* 383 U.S. at 17, 86 S.Ct. at 694, cited with approval in *Dennison Mfg. Co. v. Panduit Corp.,* 475 U.S. 809, 810–11, 106 S.Ct. 1578, 1579, 89 L.Ed.2d 817 (1986).[4]

■ The issue of obviousness, a factual question, was placed before the jury for their determination. In response to Special Interrogatory No. 5, the jury determined that all prior art was appropriately considered by the Patent Office. In response to Question No. 6, the jury determined that the claims of the patent were not obvious to a person having ordinary skill in the pertinent art at the time of the invention. The court agrees. Although there are numerous products, including scissors and camp stools, which have some similarity to some features of the headrest, these limited similarities are not sufficient to make the patent obvious. *See Graham,* 383 U.S. at 13–14, 86 S.Ct. at 691–92. The patent examiners considered a wide range of prior art before granting the patent application. Testimony indicated that some familiarity with manufacturing materials was necessary for design and development of the product. We find that the level of skill in the field is that of a product designer. The invention was not such as to be obvious to a person with ordinary skill. Defendants have not presented evidence sufficient to overcome the presumption of validity which

attached to a regularly issued United States patent.

**Effect of Other Litigation—Collateral Estoppel:**

■ Defendants seek to limit plaintiffs' recovery on a res judicata/collateral estoppel theory based on the judgment in *Sun Products Group, Inc. v. B & E Sales Company, Inc.,* 700 F.Supp. 366 (E.D.Mich. 1988). *B & E* also involved infringement of patent 203. The trial court found that B & E had infringed the patent and had copied plaintiffs' trade dress in almost every detail. *Id.* The court awarded damages for lost profits between 1985 and 1992. *Id.* at 386. The court specifically found that "... no alleged infringer of the '203 patent except B & E ever exerted a significant impact upon 'Headchair' sales." *Id.* at 371 n. 5. Walgreen was never mentioned as a possible infringer during the *B & E* litigation. At trial, we allowed argument on this issue and overruled defendants' collateral estoppel defense. The court further indicated that it would be receptive to any special instructions the parties might submit on this issue.

Another question presented is that of damages. We start out with the proposition that plaintiffs are not entitled to a double recovery, i.e., that realized in the *B & E* case increased by damages in the present action. Plaintiffs have proved damages apart from those recovered in the *B & E* litigation. Testimony indicated that B & E sold an infringing product during 1985 and 1986. Testimony of Steven Younger. Walgreen did not begin national sales until 1987. After B & E removed their product from the market, plaintiffs made efforts to rebuild their retail and premium sales. Testimony of Steven Younger. Further, plaintiffs' efforts to protect their patent through litigation had a positive effect on the premium sales market. Testimony of Steven Younger. Plaintiffs' expert witness testified that he had calculated damages in such a way as to

---

**4.** Although commercial success may be considered in determining obviousness, commercial success alone does not establish validity of a patent. *True Temper Corp. v. CF & I Steel*

*Corporation,* 193 U.S.P.Q. 763 (D.Colo.1976), *aff'd [rev'd on other grounds],* 601 F.2d 495 (10th Cir.1979).

prevent double recovery and carve out damages recovered in the *B & E* litigation. Testimony of Douglas L. MacLachlan. Further, the damage figure testified to by Younger was also calculated in such a way as to prevent double recovery.

The *B & E* infringement and injury occurred in a distinct time frame from the injury in the present suit. Testimony regarding damages was clearly structured in such a way as to acknowledge the *B & E* recovery and prevent double recovery. Further, Mr. MacLachlan testified that he had not made any premium market calculations in connection with the *B & E* litigation. The damages testified to were damages which had accrued after the *B & E* matter was resolved and were solely the result of the Walgreen infringement. No double recovery has occurred.

Equitable estoppel:

■ Defendants maintain that plaintiffs are estopped from recovery as they failed to act in accordance with their 1987 representations that litigation was imminent. Plaintiffs first received notice of the infringement through a Walgreen newspaper circular issued in late April 1987. Plaintiffs' Exhibit 14. A cease and desist letter was mailed to Walgreen on April 27, 1987. Plaintiffs' Exhibit 8. A letter from plaintiffs' patent counsel was mailed to Walgreen on May 6, 1987. Plaintiffs' Exhibit 9. The second letter threatened litigation and indicated that counsel had received authorization to file suit if no response was received in ten days. Plaintiffs' Exhibit 9. Jill Leslie Drell, Esq., an attorney for Walgreen, responded to this letter on May 15, 1987. Plaintiffs' Exhibit 10. A letter was then sent by defendants' patent counsel to plaintiffs' patent counsel requesting more information. Plaintiffs' Exhibit 11. A response was mailed on June 22, 1987. Plaintiffs' Exhibit 12. Testimony regarding telephone communication between Ms. Drell and Mr. Younger was conflicting. Testimony of Steven Younger; Testimony of Jill Drell.

Special Interrogatory No. 20 asked the jury whether they found "... by a preponderance of the evidence that Plaintiffs un-

reasonably and inexcusably delayed in bringing suit and that this delay was materially prejudicial to Defendants." The jury responded negatively. We agree. Even assuming that plaintiffs delayed unreasonably, defendants presented no evidence indicating that they were in any way prejudiced by these actions. Defendants' activity with regard to the headrest consisted of purchasing, advertising, and selling the product. No money was expended on improving production or further developing the product. No evidence was presented that the Walgreen's advertising strategy was altered in reliance on plaintiffs' silence. Plaintiffs are not estopped from bringing suit and the estoppel theory is unavailing.

Damages:

■ Both parties contest the damages awarded. Defendants contend that there was not sufficient evidence of causation. There was no evidence from which the jury could determine that but for the infringement, plaintiffs' lost sales would not have occurred. *Milgo*, 623 F.2d at 665. Plaintiffs contend that the damages awarded were inadequate, are contrary to the weight of the evidence, and resulted from an improper damages instruction.

Younger presented opinion testimony that plaintiffs' projected lost profits in the premium sales market between 1988 and 2002 totalled more than 16 million dollars. Testimony of Steven Younger. Plaintiffs' Exhibit 430. Douglas MacLachlan, plaintiffs' expert, also testified to projected damages between 1992 and 2002, excluding damages incurred earlier to avoid double recovery. However, testimony also indicated that both Sun Products and Sun Global had a history of cash flow problems and, for various reasons, the Headchair had yet to be highly profitable. Testimony of Steven Younger. The jury concluded that plaintiffs were only entitled to recover $300,000.00 for damages incurred after 1992. We do not find that the damage amount resulted from speculation or conjecture on the part of the jury. Indeed, the damage instruction specifically cautioned against such reasoning. The damages

awarded are supported by the evidence. The damages are not grossly inadequate.

▮▮▮▮▮ Plaintiffs further contend that the court improperly instructed the jury on damages.[5] This contention is without merit. Plaintiffs are, once again, simply alleging that the jury somehow erroneously awarded insufficient damages. The court must review the instructions as a whole to determine whether error occurred. *Shatterproof Glass*, 758 F.2d at 626. The jury was instructed that damages must be adequate to compensate for infringement and in no event less than a reasonable royalty. Instruction Nos. 48, 50. Plaintiff bears the burden of proving damages. Instruction No. 48. Further, the jury was instructed: "In determining the issue of damages, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which the patent owner has suffered as a result of the alleged infringement." Instruction No. 51. The instructions, taken as a whole, are adequate. The jury determination that plaintiffs' recoverable damages were $300,000.00 is supported by the evidence and the law.

Treble Damages:

▮▮▮▮▮ The court enjoys discretion to treble the damages awarded pursuant to 35 U.S.C. § 284. *Acoustical Design, Inc. v. Control Electronics Co., Inc.*, 932 F.2d 939 (Fed.Cir.1991); *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed.Cir. 1990), *cert. den.*, — U.S. —, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991); *American Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 464 (Fed.Cir.1985); *Milgo*, 623

F.2d at 665. A finding of willful infringement will support an award of increased damages. *Bott v. Four Star Corp.*, 807 F.2d 1567, 1574 (Fed.Cir.1986); *Lam*, 668 F.2d at 474; *Shatterproof Glass*, 758 F.2d at 628; *Jenkins*, 774 F.2d at 464. However, such a finding does not mandate increased damages. *Modine*, 917 F.2d at 543. There is no requirement that "bad faith" be proven before damages can be enhanced in a willful infringement case. *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 902 (Fed.Cir.), *cert. den.*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986). Receipt of a letter from counsel indicating noninfringement of the patent will not defeat increased damages. *Lam*, 668 F.2d at 475. The evidence presented at trial supports an award of increased damages. The jury determined that defendants acted willfully. The court therefore, in its discretion, trebles the damage award.

Attorney Fees:

▮▮▮▮▮ As with trebled damages, an award of attorney fees is within the discretion of the court. *Acoustical Design*, 932 F.2d 939; *Shatterproof Glass*, 758 F.2d at 629; *Lam*, 668 F.2d at 476; *Milgo*, 623 F.2d at 667; *True Temper*, 601 F.2d at 508. "Attorneys' fees are awarded to compensate the prevailing party because the losing party's misconduct was so unfair and reckless as to make it unconscionable for the prevailing party to sustain the expense of counsel." *Lam*, 668 F.2d at 476. Section 285 allows for an award of fees upon a finding of exceptional circumstances. *Modine*, 917 F.2d at 543; *Bott*, 807 F.2d at 1574; *Shatterproof Glass*, 758 F.2d at 629;

---

**5.** The lost profits instruction reads:

**INSTRUCTION NO. 49**

Plaintiff Sun Products is seeking damages in the form of lost profits. Plaintiff Sun Products must establish causation between its lost net profits and the infringement. A factual basis for causation is that "but for" the infringement, Sun Products would have made the sales that the infringer made.

Sun Products is entitled to recover as damages the net profits on sales Sun Products would have made absent the infringement, i.e., the sales made by Defendant Walgreen if it can prove: (1) demand for the patented product; (2) absence of acceptable non-infringing substi-

tutes; (3) Plaintiffs' manufacturing and marketing capability to exploit the demand; and (4) the amount of the net profit Plaintiffs would have made.

Net profits means revenues from the sale of head rests, less the cost of obtaining or manufacturing the head rest (cost of goods sold) and less all operating costs and expenses such as advertising, rent, salaries, promotions, etc.

A determination of lost profits cannot be speculative, remote, or conjectural.

A device which is available but not being sold in substantial quantities in the United States does not constitute an acceptable non-infringing substitute.

*Jenkins,* 774 F.2d at 466; *Lam,* 668 F.2d at 476; *Milgo,* 623 F.2d at 666–67. A litigation could be deemed exceptional where the infringer's conduct in the marketplace was such as to produce an unnecessary and outcome-certain lawsuit or where either the party or counsel displayed bad faith in the litigation process. *True Temper,* 601 F.2d at 508; *Kloster Speedsteel AB v. Crucible Inc.,* 793 F.2d 1565, 1580 (Fed.Cir.1986), *modified in part,* 231 U.S.P.Q. 160 (1986). A finding of willful infringement is also sufficient to classify a case as exceptional. *Modine,* 917 F.2d at 543.

■■■■■ Although we affirm the jury's finding of willful infringement, we do not believe that this is an exceptional case meriting an award of attorney fees. In allowing this matter to progress to trial, defendants did not act in bad faith. Their defense was neither frivolous nor asserted for improper purpose. The outcome of this litigation was by no means certain. That plaintiffs prevail in an infringement case does not automatically entitle them to an award of attorney fees. The court has considered and rejects plaintiffs' request for attorney fees.

Prejudgment Interest:

■■■■■ The court may award prejudgment interest on a damage award where the infringement was found to be willful. *Lam v. Johns–Manville Corp.,* 718 F.2d 1056, 1066 (C.A.Fed.1983); *Milgo,* 623 F.2d at 668; *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655–56, 103 S.Ct. 2058, 2062–63, 76 L.Ed.2d 211 (1983). Although prejudgment interest is generally awarded in patent suits, such an award is not necessary to make plaintiffs whole in the present case. Plaintiff's expert purposefully limited damages between 1988 and 1992 to zero to account for the *B & E* litigation. Testimony of Douglas MacLachlan. Any damage award is therefore for damages occurring after 1992. Prejudgment interest is not appropriate where the damages are re-covered for future lost profits rather than past or present lost profits. An award of prejudgment interest would place plaintiffs in a position better than that they would have been in had the infringement never occurred.

Costs:

The court will award costs. 28 U.S.C. §§ 1821 and 1920; 35 U.S.C. § 284; Fed. R.Civ.P. 54(d). *See True Temper,* 601 F.2d at 509. The costs awarded shall be limited to those items recoverable under 28 U.S.C. §§ 1821 and 1920. Plaintiffs are DIRECTED to submit their Bill of Costs to the Clerk of the Court.

## ORDER

Defendants' Motion for Judgment Notwithstanding the Verdict is DENIED.

Plaintiffs' Motion for a New Trial on the Issue of Damages and for Prejudgment Interest, Costs, Increased Damages, and Attorneys' Fees is GRANTED in part and DENIED in part.

The damage award of $300,000.00 is trebled resulting in a damage award of $900,-000.00.

Plaintiffs are awarded costs pursuant to 28 U.S.C. §§ 1821 and 1920. Plaintiffs are DIRECTED to submit their Bill of Costs to the Clerk of the Court.

Plaintiffs' request for attorney fees is DENIED.

Plaintiffs' request for a new trial is DENIED.

All post-trial Motions not herein addressed are DENIED.

IT IS FURTHER ORDERED that the Judgment on Verdict entered on May 20, 1991 is VACATED. The Clerk of the Court is DIRECTED to enter an Amended Judgment in accordance with this Order. The Clerk of the Court is DIRECTED to enter judgment in favor of plaintiff Phillip Oiness and against defendants for willful infringement of U.S.Patent No. 4,544,203 in the amount of $900,000,00 together with post judgment interest and costs.

## APPENDIX A
### SPECIAL VERDICT FORM

We, the jury, present our answers to the questions submitted by the court, to which we have unanimously agreed:

**Question No. 1:** Did Steven Younger convey his ownership interest in U.S.Patent 4,544,203 to Sun Global, Inc.?

**Answer No. 1:** Yes __XX__ No _____

**Question No. 2:** Did Rudolf Fiedelak convey his ownership interest in U.S.Patent 4,544,203 to Sun Global, Inc.?

**Answer No. 2:** Yes __XX__ No _____

**Question No. 3:** If you answered No to Question 2, did Defendants Walgreen and Atico obtain a license under the patent from Mr. Fiedelak?

**Answer No. 3:** Yes _____ No _____

**Question No. 4:** If you answered Yes to Questions 1 and 2, does Phillip Oiness presently own the entire right, title and interest in the patent in suit?

**Answer No. 4:** Yes __XX__ No _____

**Question No. 5:** Do you find by a preponderance of the evidence that prior art which should have been considered on the issue of obviousness was not considered by the Patent Office during its examination of the application for the HEADCHAIR patent?

**Answer No. 5:** Yes _____ No __XX__

**Question No. 6:** Have Defendants shown by clear and convincing evidence that the following claims of U.S.Patent No. 4,544,203 are invalid because, at the time the alleged invention was made, the differences between these claims and the pertinent prior art are such that the subject matter of the claims, taken as a whole, would have been obvious to a person having ordinary skill in the pertinent art at the time of the invention. [Answer "yes" or "no" for each claim.]

**Answer No. 6:**
 Claim 1: Yes _____ No __XX__
 Claim 2: Yes _____ No __XX__
 Claim 3: Yes _____ No __XX__

**Question No. 7:** Do you find by a preponderance of the evidence that Defendant Walgreen has infringed Claim 1 of U.S.Patent No. 4,544,203?

**Answer No. 7:** Yes __XX__ No _____

**Question No. 8:** Do you find by a preponderance of the evidence that Defendant Walgreen has infringed Claim 2 of U.S.Patent No. 4,544,203?

**Answer No. 8:** Yes __XX__ No _____

**Question No. 9:** Do you find by a preponderance of the evidence that defendant Walgreen has infringed Claim 3 of U.S.Patent No. 4,544,203?

**Answer No. 9:** Yes __XX__ No _____

**Question No. 10:** Do you find by a preponderance of the evidence that Defendants Atico has infringed Claim 1 of U.S.Patent No. 4,544,203?

**Answer No. 10:** Yes __XX__ No _____

**Question No. 11:** Do you find by a preponderance of the evidence that Defendants Atico has infringed Claim 2 of U.S.Patent No. 4,544,203?

**Answer No. 11:** Yes __XX__ No _____

**Question No. 12:** Do you find by a preponderance of the evidence that Defendants Atico has infringed Claim 3 of U.S.Patent No. 4,544,203?

**Answer No. 12:** Yes __XX__ No _____

**Question No. 13:** If the Answer to any one of Questions 7 through 9 was "yes", do you find by clear and convincing evidence that Defendant Walgreen's infringement of the patent was wilful and deliberate?

**Answer No. 13:** Yes ___XX___ No _____

**Question No. 14:** If the Answer to any one of Questions 10 through 12 was "yes", do you find by clear and convincing evidence that Defendants Atico infringement of the patent was wilful and deliberate?

**Answer No. 14:** Yes ___XX___ No _____

**Question No. 15:** Do you find by a preponderance of the evidence that the Defendants conspired with each other to infringe U.S.Patent No. 4,544,203?

**Answer No. 15:** Yes _____ No ___XX___

**Question No. 16:** If you answered "yes" to any one of Questions 7 through 12, what amount, if any, do you award to Plaintiffs in damages?

(A) In the retail sales market? $___50,000.00___

(B) In the premium incentive and/or advertising specialty markets? $___250,000.00___

(C) Total amount of items (A) and (B) above: $___300,000.00___

**Question No. 17:** If you answered "yes" to Question No. 15, what amount, if any, are Plaintiffs entitled to recover as a result of the conspiracy between defendants?

**Answer No. 17:** $_____

**Question No. 18:** Do you find beyond a reasonable doubt that Plaintiffs are entitled to recover exemplary damages from:

(A) Defendant Walgreen Yes _____ No ___XX___

(B) Defendants Atico Yes _____ No ___XX___

**Question No. 19:** If you answered "yes" to either part of Question No. 18, what is the total amount of exemplary damages plaintiffs are entitled to recover?

(A) from Defendant Walgreen? $_____

(B) from Defendants Atico? $_____

**Question No. 20:** Do you find by a preponderance of the evidence that Plaintiffs unreasonably and inexcusably delayed in bringing suit and that this delay was materially prejudicial to defendants?

**Answer No. 20:** Yes _____ No ___XX___

---

## ON MOTION TO ALTER OR AMEND

THIS MATTER comes before the court on Defendants' Motion to Reconsider Order and Alter or Amend the Judgment, filed July 12, 1991, and plaintiffs' Motion for Limited Reconsideration, filed July 29, 1991. For the reasons stated below, both Motions are denied.

### I.

This litigation involves claims of infringement of United States Patent 4,544,203, the patent for plaintiffs' Headchair product. The jury returned an unanimous special verdict and awarded $300,000.00 in actual damages to plaintiffs. Judgment was entered on May 20, 1991. Post-trial motions were resolved by an Order entered on June 28, 1991. The court trebled the damage award. An Amended Judgment was entered on June 28, 1991. Execution has been stayed until August 23, 1991.

 A motion for reconsideration should be granted only where the court has patently misunderstood a party or has made a mistake, not of reasoning, but of apprehension. *Equal Employment Comm'n v. Foothills Title Guaranty Co.*, No. 90–A–361, slip op. at 5–6, 1991 WL

61012 (D.Colo. April 12, 1991), citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983). Reconsideration is also proper where there has been a significant change in the law or facts since submission to the court. *Id.* at 6. To the extent that a motion for reconsideration merely restates arguments previously addressed, the court should decline to reconsider the ruling. *Russell v. Turnbaugh*, No. 90–F–272, slip op. at 3 (D.Colo. February 28, 1991).

## II.

■ Defendants challenge the increase of damages, claiming that no evidence was presented that could lead to a conclusion of willfulness. Defendants argue that the trebled damages are out of proportion to the loss actually sustained by plaintiff, and are therefore excessive, especially in light of the jury's denial of exemplary damages. The arguments raised do not differ from those raised by the post-trial motions.

A jury's finding of willful infringement must stand unless it is clearly erroneous. *Norfin, Inc. v. International Business Machines, Corp.*, 625 F.2d 357, 366 (10th Cir.1980). The jury responded affirmatively to special interrogatories relating to the willfulness of the infringement by each defendant.[1] A finding of willful infringement will support an award of increased damages pursuant to 35 U.S.C. § 284. *Bott v. Four Star Corp.*, 807 F.2d 1567, 1574 (Fed. Cir.1986); *Lam, Inc. v. Johns–Manville Corp.*, 668 F.2d 462, 474 (10th Cir.), *cert. den.*, 456 U.S. 1007, 102 S.Ct. 2298, 73 L.Ed.2d 1302 (1982); *American Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 464 (Fed.Cir.1985). Questions of credibility and motivation relating to willfulness are within the province of the trier of fact. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 628 (Fed. Cir.1985). As noted in the June 28, 1991 Order, the evidence presented at trial was sufficient for the jury to find that the infringement of the Headchair patent was willful and deliberate. Further, the trebled damages are not excessive in light of the damage testimony presented. Testimony was presented that plaintiffs' projected lost profits in the premium sales market between 1988 and 2002 totalled more than 16 million dollars. The final damage award of $900,000.00 is within the range of actual damages suffered by plaintiffs.

## III.

Plaintiffs move for reconsideration of the court's denial of attorney fees and prejudgment interest. Plaintiffs also seek recovery of expert witness costs.

Attorney Fees:

An award of attorney fees is within the discretion of the court. *Lam*, 668 F.2d at 476; *Acoustical Design, Inc. v. Control Electronics Co., Inc.*, 932 F.2d 939 (Fed. Cir.1991); *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645, 667 (10th Cir.), *cert. den.*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980); *True Temper Corp. v. CF & I Steel Corp.*, 601 F.2d 495, 508 (10th Cir.1979). The arguments raised by plaintiffs were adequately addressed in the post-trial motions. We adhere to our decision that the actions of defendants in selling the infringing headrest and maintaining this litigation were not so unfair and reckless as to make it unconscionable for plaintiffs to sustain the expense of counsel. *Lam*, 668

---

1. The special interrogatories provided:

 **Question No. 13:** If the Answer to any one of Questions 7 through 9 was "yes", do you find by clear and convincing evidence that Defendant Walgreen's infringement of the patent was wilful and deliberate?

 **Answer No. 13:** Yes ___XX___ No _____

 **Question No. 14:** If the Answer to any one of Questions 10 through 12 was "yes", do you find by clear and convincing evidence that Defendants Atico infringement of the patent was wilful and deliberate?

 **Answer No. 14:** Yes ___XX___ No _____

F.2d at 476. We do not agree with plaintiffs' characterization of defendants' bad faith, evidenced by alleged actions taken to conceal evidence and transfer a key witness to Hong Kong. These allegations are conjecture and are not supported by actual evidence. The court affirms the denial of attorney fees.

Prejudgment Interest:

The question of whether to award prejudgment interest in a federal question case is governed by federal law. *Federal Deposit Ins. Corp. v. Rocket Oil Co.*, 865 F.2d 1158, 1160 (10th Cir.1989). In the absence of a statutory provision to the contrary, the decision whether to award prejudgment interest rests within the sound discretion of the trial court. *Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1040 (10th Cir.1990); *Rocket Oil*, 865 F.2d at 1160; *Considine v. Board of County Comm'r*, No. 88–F–502, slip op. (D.Colo. August 7, 1991); *see West Virginia v. United States*, 479 U.S. 305, 308, 107 S.Ct. 702, 705, 93 L.Ed.2d 639 (1987). Under federal law, prejudgment interest should ordinarily be awarded absent some justification for withholding it. *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir.1988).

The decision to award prejudgment interest is governed by a two-step analysis. First, we must determine whether the award would serve to compensate the injured party. Second, when an award would serve a compensatory function, we must decide whether the equities preclude the award. *Id.* at 1257. In the present case, prejudgment interest would not serve to compensate plaintiffs.

Prejudgment interest is not appropriate where damages are recovered for future injury rather than past or present losses. In the June 28 Order, the court noted that the damages awarded were purposefully limited to damages occurring after 1992 to prevent double recovery in light of the damage award in *Sun Products Group, Inc. v. B & E Sales Co.*, 700 F.Supp. 366 (E.D.Mich.1988), *aff'd*, 935 F.2d 281 (Fed. Cir.1991). Plaintiffs assert that the limit was only placed on damages in the retail sales market, as the *B & E* litigation did not involve damages to the premium sales market. As such, the $250,000.00 awarded by the jury for damages in the premium sales market is not an award for future damages. We disagree. Although it is unclear what influence premium sales damages had upon the *B & E* litigation, it is apparent that the premium sales market was mentioned during the prior litigation. Double recovery is prevented only to the extent that the damages received in both markets are limited to distinct injuries and time periods. Due to the unusual circumstances created by the prior litigation and the resulting chronological delineation of damages, prejudgment interest is not appropriate in this case.

Expert Witness Fees:

Plaintiffs seek to recover expert witness fees and travel expenses incurred during and in preparation for trial. In the June 28 Order, plaintiffs were awarded costs pursuant to 28 U.S.C. §§ 1821 and 1920. The court may not exceed the statutory limitation on expert witness fees contained in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987); *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 250 (1st Cir.), *cert. den.*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985); *Cleverock Energy Corp. v. Trepel*, 609 F.2d 1358 (10th Cir.1979), *cert. den.*, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980); *Lukowicz v. Comprecare Health Care Services, Inc.*, No. 90–F–635, slip op. at 2 1989 WL 259995 (D.Colo. March 6, 1991); *In re Air Crash Disaster at Stapleton Internat'l Airport, Denver, Colorado, on November 15, 1987*, MDL No. 751, slip op. at 5 (D.Colo. July 24, 1989); *Fields v. Freedman*, 1988 WL 242557, 1988 U.S.Dist.Lexis 1611 (D.Kan.1988); *Schmid v. Frosch*, 609 F.Supp. 490, 493 (D.D.C.1985); *Westman Comm'n Co. v. Hobart Corp.*, 562 F.Supp. 729, 737 (D.Colo.1983), *rev'd on other grounds*, 796 F.2d 1216 (1986). The court will decline to reconsider the cost award.

ACCORDINGLY, Defendants' Motion to Reconsider Order and Alter or Amend the Judgment is DENIED.

Plaintiffs' Motion for Limited Reconsideration is DENIED.